# MINNIE MENTEER, Appellant, v. SCALZO FRUIT COMPANY.

### Division Two, February 27, 1912.

1. **NEGLIGENCE: Customer: Overstepping Bounds of Invitation: Elevator.** Deceased was a customer of defendant who had frequently visited defendant's wholesale fruit store and made purchases in person. About noon on a day in 1904 his dead body was found at the bottom of an elevator shaft in defendant's store. No one was aware of his presence on the premises until the body was discovered. According to the evidence, deceased had, without invitation, entered a part of the building not designed for unattended customers; the elevator was not used to carry passengers, and there was a barrier in front of the entrance heavy and hard to pull aside and two and one-half to three feet high. *Held*, that there can be no recovery for the death.

2. ———: **Duty of Merchant to Customer as Invitee: Licensee.** A merchant's duty to use ordinary care to keep the premises to which he expressly or impliedly invites customers in such condition as to prevent injury to them arises out of and is coextensive, both as to time and place, with the invitation extended. The invitation cannot be enlarged by the customer to include parts of the premises to which the invitation does not extend. When an invitee steps clearly beyond the bounds of his invitation he becomes a mere licensee at most, and must take as he finds it the part of the premises he then enters. He may complain of wanton or intentional injuries or active negligence, but not that the place was not made safe.

3. **EVIDENCE: Presumptions: Contributory Negligence: Invitee.** It cannot be presumed that the barrier at the entrance to the elevator shaft was not in place. There is a presumption that persons killed by the negligence of another were at the time exercising due care, but that presumption is not one of defendant's negligence. It is a presumption of deceased's freedom from contributory negligence, and certainly no such presumption can be relied upon to enlarge the invitation to deceased.

Appeal from St. Louis City Circuit Court.—*Hon. W. M. Kinsey,* Judge.

AFFIRMED.

240 Sup.—12

*Perry Post Taylor* and *Emil Mayer* for appellant.

(1)    Each and every averment of the petition essential to fix liability upon the defendant was sustained by some evidence.    Hence, the court should have overruled the demurrer to the evidence and permitted the jury to decide the issues of fact.    Koerner v. Car Co., 209 Mo. 151; Hollweg v. Telephone Co., 195 Mo. 165.    (2)    Deceased, having entered defendant's premises, as a customer, on business for the benefit of defendant, as well as of himself, was there as an invitee, and it was the duty of the defendant to exercise reasonable care to keep its premises in such condition that, if deceased was himself exercising such care, the latter would not suffer injury.    Glaser v. Rothschild, 221 Mo. 186; Welch v. McAllister, 15 Mo. App. 496; Miller v. Dry Goods Co., 104 Mo. App. 609; Pauckner v. Wakem, 14 L. R. A. (N. S.) 1118, 231 Ill. 276.    (3)    There being no evidence to the contrary, it must be presumed that the deceased, when he fell, was in the exercise of ordinary care.    Buesching v. Gas Light Co., 73 Mo. 231; Goff v. Transit Co., 199 Mo. 706; Railroad v. Gentry, 163 U. S. 353.    (4)    It must be inferred from the evidence that defendant entered the shaft by way of the entrance from the shipping room floor.    If he had a right, as a customer, to be there, it was for the jury to determine whether or not defendant was negligent in maintaining its premises in its then condition.    Lamb v. Railroad, 147 Mo. 186. (5)    It was for the jury to determine whether or not the defendant was negligent in maintaining the elevator hatchway at the shipping room floor in the condition disclosed by the evidence.    Lamb v. Railroad, supra; Meng v. Railroad, 108 Mo. App. 553.    (6)    The court erred in excluding testimony as to statements of deceased, made shortly prior to his death, as to where he was going and for what purpose.    Such statements could not, in view of all the facts, have

been self-serving. They were a part of the *res gestae.* 16 Cyc. 1241, 1243.

*C. H. Krum* and *G. B. Sidener* for respondent.

BLAIR, C.—This is an appeal from an order overruling a motion to set aside a nonsuit in an action for damages for the death of Thomas Menteer.

The third amended petition stated that defendant was engaged in the wholesale fruit business in St. Louis, Missouri; that it was defendant's duty to keep the premises it occupied in such condition as that the lives and limbs of its customers would not be endangered, and proceeds:

"Plaintiff avers that defendant failed and neglected to keep said premises in such condition, and more particularly in this, to-wit:

"That in said building there was at the time of the death of plaintiff's husband, and had been for a long time prior thereto, an elevator shaft running from the basement to the top floor of said building and that in said shaft defendant used and operated an elevator; that the entrance to said shaft from the shipping room floor of said building was constructed in such a manner as to bear no resemblance to the usual entrance to such a shaft but was so constructed as to deceive persons unfamiliar with the premises as to its true nature, and that the same might be readily mistaken by persons lawfully upon said premises and upon said shipping room floor for an entrance or passageway of some other nature; that there was no gate or other guard at said entrance and immediately around and enclosing said shaft but that such gate or guard, when in place was about six feet distant from said shaft and so constructed as to be misleading as to its nature and purposes and as to the nature and purposes of said entrance. Plaintiff further states that the approach to said shaft by way of said entrance was dimly and

insufficiently lighted and that said gate or guard was of such nature or character that it could easily be opened or removed from said entrance and was calculated to deceive persons as to the purpose for which it was intended and as to the place at which it was located; that on said shipping room floor and near said entrance the plaintiff maintained in said premises a room for the storage and sale of fruits and that such room was at times visited by persons desiring to purchase fruits from the defendant, and that the entrance to such room—located near said entrance to said shaft —was of such a nature that persons not entirely familiar with said premises might easily and readily mistake one for the other; that said entrance or passageway from said shipping room floor to said shaft was maintained by defendant in a dimly and insufficiently light condition.  Plaintiff further states that this unsafe condition of said premises existed for some time prior to September 14, 1904, and was well known to defendant, or by the exercise of ordinary care and diligence could have been known to it.

"Plaintiff further states that on the 14th day of September, 1904, and within six months next before the filing of the original petition in this cause of action, said Thomas Menteer was on the premises aforesaid as a customer of defendant, and that said defendant maintained said premises, and that portion thereof at and near said entrance or passageway and on said shipping room floor, as a place for the use and accommodation of its customers, and that said Thomas Menteer, while on said premises at and near said entrance or passageway and on said shipping room floor as a customer—where as such he had a right to be— and while in the exercise of ordinary care, entered said entrance or passageway leading to said shaft without knowing its true nature and without any warning to him of the nature thereof and by reason of the fact that said entrance or passageway was dimly and

insufficiently lighted, as aforesaid, and by reason also of the fact that said shaft had been negligently and carelessly left in an open and unguarded condition, as hereinbefore described, said Menteer fell into said shaft and sustained such injuries as to cause his death as a result thereof.''

The facts were that about twelve o'clock noon, September 14, 1904, the body of Thomas Menteer was found at the bottom of an elevator shaft in the building occupied by defendant at 900 North Third street, in the city of St. Louis. The neck was broken and there was a cut over one eye. No one was aware of Menteer's presence on the premises until the body was discovered.

Menteer was a merchant and conducted a store at Fredericktown, Missouri. He was about forty-five years of age, temperate in his habits and was shown to have been sober at 10 a. m., on the day he met his death. For some time he had been a customer of defendant, usually ordering by mail, but had frequently visited defendant's establishment and made purchases in person.

The building occupied by defendant extended from Third street along Franklin avenue to Collins street. It faced Third street, and on its front were several large signs giving the name and indicating the business of the occupant. This main entrance to the building, and the only entrance from the street to the sales department, was on Third street.

The shipping department floor level was about six feet below that of the sales department and the grade of Franklin avenue was such that there was an entrance from it into the shipping department, over the doors of which appeared the words ''shipping department'' in large gilt letters, the sign being twelve feet long and eighteen inches wide. On Collins street, at the back of the building, was another entrance, a large double door, at which there was a platform from

which fruits for shipment were loaded on wagons. Under the shipping department was a cellar or basement. Under the west or Third street part of the building was the "banana room," the floor level of which was about ten feet lower than that of the sales department, and about four feet lower than that of the shipping department, the latter and the main basement being beneath the east or Collins street part of the building.

An elevator shaft, with openings on its east side into the basement and shipping room and on its west side into the banana room and sales department, ran from the basement to the top of the building.

There were three floors above the sales department in the Third street part of the building and two above the shipping room in the Collins street part.

At the entrances into the elevator shaft in the banana room, the sales department and all the upper floors, there were guards at the shaft and all were closed. There was no guard right at the shaft in the shipping department, but a passageway six or eight feet long led to the elevator entrance on this floor. To close the opening of this passageway a "sort of fence about twelve feet long" was provided, which was not easily removed. It was two and one half to three feet high and did not work on hinges, but in order to remove it it was necessary to pick it up and carry it to one side. It did not work easily and was hard to pull aside.

The evidence tended to show that no artificial light was in use at the time of the accident, and the only witness who was asked about it testified that there was no need of artificial light in the shipping room at noon time, since there were four windows on its Franklin avenue side and the upper part of the door was of glass.

There was a small banana room on the same level with the shipping room floor, to reach which from

the Franklin avenue entrance one would pass the entrance into the passageway leading to the elevator. One witness testified that he had seen customers use the Franklin avenue entrance to reach this banana room, but very seldom. This witness, the only one who testified on the point, said that he always accompanied customers to the shipping room when he had occasion to make a sale in the banana room, but did not know whether or not all customers were so accompanied.

There was no evidence that the gate or guard was not in place on the shipping room floor on September 14, 1904, either before or after the accident occurred and none as to whether the Franklin avenue door was open or closed. No sign or warning had been placed at the elevator shaft on the shipping room floor. There was no evidence that customers were permitted to or did visit the shipping department unattended when no representative of the company was there. Nor was there any evidence that deceased had ever before been in that department at all. The elevator was used to convey freight and, so far as the evidence discloses, for no other purpose.

I. A merchant's duty to use ordinary care to keep the premises, to which he expressly or impliedly invites customers, in such condition as to prevent injury to them (Glaser v. Rothschild, 221 Mo. 1. c. 186, 187) arises out of and is coextensive both as to time and place with the invitation extended. To create an obligation of this kind the invitation must proceed from the merchant to the customer, as an individual or as one of a class or of the public, and cannot be enlarged by the customer to include parts of the premises to which the invitation does not extend. When an invitee steps clearly beyond the bounds of his invitation he then becomes a mere licensee, at most, and must take as he finds it the part of the premises he then enters.

He may complain of wanton or intentional injury or active negligence, it is said, but not that the place into which he goes for his own purposes and without invitation was not made safe in anticipation of his unexpected and undesired presence.

In applying these rules to the facts of this case, the trial court possessed one advantage of which we are deprived. That court had before it a photograph of the exterior of the building occupied by defendant and what that may have disclosed as to the character of the Franklin avenue entrance does not appear in this record. This omission is not supplied by any other evidence. In addition to what appears from the testimony, the photograph may have made clear that the very structure of that entrance was such as, added to the sign above it, to constitute notice that it was neither expected nor desired that customers should enter by it. There is no evidence that Menteer had ever been in the shipping room before. The entrance was a side entrance (dimensions not given), and there is no intimation that the door was open. The reasonable inference from the testimony is that it was not. While Menteer had visited the building and made purchases he had, so far as the record discloses, theretofore entered at the usual place, the door on Third street. There is no evidence that there was among defendant's customers any custom, known either to defendant or deceased, of using the Franklin avenue entrance. That deceased did enter the building at that place we think the evidence shows beyond doubt. Having done so, he found himself in an unfamiliar place, one the very appearance of which must have advised him it was not intended for the use of unattended customers. Where he then attempted to go and why he made his way into the passage to the elevator is purely conjectural.

It is suggested that he was attempting to find the small banana room on the level of the shipping room

floor and, deceived by conditions, mistook the passageway for it. There is not a scintilla of evidence that he had ever been in this banana room and none that he so much as knew of its existence. It is neither alleged nor proved that he was endeavoring to get to the elevator itself. The petition lacks much of being clear as to just what negligence is intended to be charged and what actually caused Menteer's death. It tiptoes around the vital fact upon which liability must be predicated, if liability there can be. Neither the pleader nor the witnesses knew what the real circumstances were and could not know. The only evidence on the subject tends to show that the barrier used to prevent entrance into the passageway to the elevator was in place. Though it be conceded that the implied invitation to deceased authorized his entrance into the shipping room, how can it be contended that, in the circumstances, he might remove or climb over the barrier at the entrance to the elevator passageway and venture into that passageway without losing his character as an invitee, whatever his purpose may have been? [Bremer v. Pleiss, 121 Wis. l. c. 65.] The elevator was not used for carrying passengers, so far as the evidence shows. It is not alleged nor is there any evidence that deceased lost his way in an effort to get from the shipping room to the sales department above. This action cannot be maintained on that theory, since an invitee may not choose unusual means of ingress not intended for his use, and which he is not invited to use, the use of which is, in fact, prohibited by a barrier placed there to exclude him, and then recover for injuries he may sustain by reason of his ignoring its warning.

This is not a case in which one has been injured by falling into an opening negligently left in or near a place where he is or where it is intended or ought to be expected he will be in his character as invitee (Glaser v. Rothschild, 221 Mo. l. c. 184; Kean v.

Schoening, 103 Mo. App. l. c. 81; Welch v. McAllister, 15 Mo. App. 492; Moore v. Korte, 77 Mo. App. 500; Pauckner v. Wakem, 231 Ill. 276; Montague v. Hanson, 38 Mont. l. c. 384), nor one in which the injury resulted from the deceptive similarity of two entrances, in close proximity to each other, one of which the injured person was invited to use (Clopp v. Mear, 134 Pa. St. 203), and the other of which he entered by mistake. On the contrary, according to the evidence in this case, the facts are that deceased entered a part of the building not designed for the use of unattended customers and did so without invitation from defendant. That under these circumstances no recovery can be had for his death is well settled. [Bedell v. Berkey, 76 Mich. l. c. 439; Murray v. McLean, 57 Ill. 378; Bennett v. Butterfield, 112 Mich. 96; Lehman v. Coffee Co., 146 Wis. l. c. 218; Pelton v. Schmidt, 97 Mich. 231; Schmidt v. Bauer, 80 Cal. l. c. 568; Parker v. Publishing Co., 69 Me. l. c. 179; 1 Thompson on Neg., secs. 988, 990.]

II. It is urged that since, as it is often said, in the absence of evidence on the point it will be presumed that persons killed by the negligence of another were at the time exercising due care (Buesching v. Gaslight Co., 73 Mo. l. c. 233; Goff v. Transit Co., 199 Mo. l. c. 706; Riska v. Railroad, 180 Mo. l. c. 188; Weller v. Railroad, 164 Mo. l. c. 199; Stotler v. Railroad, 200 Mo. l. c. 146), it must be presumed that the barrier at the entrance to the passageway to the elevator was not in place. This contention is based on a misconception of the nature of the presumption upon which reliance is placed. It is not a presumption of defendant's negligence but one of deceased's freedom from contributory negligence. It does not relieve plaintiff from the burden of proving defendant's negligence. One presumption cannot be based upon another. [Cahill v. Railroad, 205 Mo. l. c. 404.]

Further, in no event could such a presumption be relied upon to add to and enlarge the invitation to Menteer.

III. In view of the conclusions reached, other questions discussed become of no importance and certain objections to the petition need not be considered.

The facts of this case enlist the sympathies but afford no ground for the recovery of damages. The judgment is affirmed. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court. All the judges concur.