A. W. HAPPY, Respondent, v. MILO H. WALZ, Appellant.—No. 40705. —213 S. W. (2d) 410.

Division One, July 12, 1948.

Rehearing Denied, September 13, 1948.

*Lauf & Bond* for appellant.

*Hendren & Andrae* for respondent.

58

[412] VAN OSDOL, C.—Action for $15,000 damages for personal injury sustained by plaintiff in falling into an elevator shaft at the rear end of defendant's store. The jury returned a verdict for defendant, but the trial court upon motion granted a new trial upon the specified ground the verdict was against the weight of the evidence. Defendant has appealed.

Plaintiff alleged negligence of defendant, the occupant of a building and proprietor of a store, in the maintenance of the elevator shaft in the rear end of his store, (1) without having the shaft marked or identified as such; (2) without maintaining locks on the shaft doors; (3) without warning the public (and particularly plaintiff) of the condition; (4) in close proximity to a similar door, a regular entrance to the store, without any guard rails or other equipment to prevent the public from walking into the shaft; and (5) without having the shaft lighted—by reason of which negligence, it was alleged, plaintiff, a business invitee, believing he was using an entrance provided for the public, walked into and fell to the bottom of the shaft and was injured.

Defendant by answer raised the general issues, and set forth affirmatively plaintiff's contributory negligence in failing to watch where he was going and in walking into an elevator shaft when, by the exercise of ordinary care, he would have discovered the danger.

Defendant-appellant contends that, in the circumstances shown in evidence, plaintiff was a licensee, not an invitee, and defendant owed plaintiff no duty to exercise due care. It is urged there was no substantial evidence introduced tending to show defendant had invited the public to approach his store through the rear door; but, should it be held otherwise, nevertheless, defendant says, it was not shown the elevator doors were in such close proximity and similarity of appearance to the rear entrance to the store as to demonstrate defendant's negligence, in the circumstances, or to justify plaintiff's mistake in entering the elevator doors. And defendant-appellant also contends plaintiff's own testimony shows he was contributorily negligent as a matter of law. Consequently, defendant-appellant urges, the trial court should have sustained defendant's motion for a directed verdict, and the trial court's action in granting the new trial was erroneous.

It was within the trial court's discretion to grant one new trial upon the ground the verdict of the jury in favor of defendant was against the weight of the evidence. However, such discretion was to be judicially, not arbitrarily, exercised. In considering the question whether the trial court (in granting the new trial upon the specified ground the verdict was against the weight of the evidence) was acting in the exercise of its judicial discretion, we will endeavor to ascertain if there was sufficient substantial evidence to sustain a verdict for plaintiff, the party to whom the new trial was granted. State ex rel. Atchison, T. & S. F. R. Co. v. Ellison, 268 Mo. 225, 186 S. W. 1075; Cullison v. Wells, 317 Mo. 880, 297 S. W. 370; Sawyer v. Winterholder, Mo. Sup., 195 S. W. 2d 659; Section 115, Civil Code of Missouri, Laws of Missouri, 1943, p. 388, Mo. R. S. A. Sec. 847.115.

There was evidence introduced tending to show defendant owns and operates a hardware store in his building fronting northwardly on Dunklin Street in Jefferson City. The main entrance is at the front, north, end of the store. Parallel with and [413] east of the hardware store and on the southwest corner of the intersection of Dunklin and Madison Streets is the building about 30 feet wide occupied by a Kroger store, which store also fronts Dunklin Street. And defendant owns and operates a furniture store in a building in the same block but fronting eastwardly on Madison Street; a main entrance is at the front, east, end of this store. The rear (south) end of defendant's hardware store and the north side of defendant's furniture store are separated by a private alley 12 feet 11 inches wide. A single (four glass panes in the upper panel) door 3 feet 8 inches wide at the rear end of the store permits ingress and egress between the alleyway and the store; and the door is opposite to and across the alley from a door into the north side of the furniture store. The distance from the west side of the rear hardware-store door to the

southwest corner of the hardware-store building is 4 feet 7 inches; and the distance from the east side of the door to the southeast corner of the store at the alley is 11 feet 5 inches; however, the entire width of the first floor of the hardware store is not represented by the total of these stated dimensions. There is an uninclosed "offset" at the southeast corner of the hardware store 9 feet 2½ inches in width, east and west, and 14 feet in length. The ground level of the offset is used by defendant as a loading dock. The offset and the alley along the rear end of the hardware store are sheltered by a closed-in passageway between the second-floor levels of defendant's two stores.

The private alley extends westwardly along the rear ends of two other stores and comes to a dead end at a garage about thirty-five feet west of the southwest corner of defendant's hardware store. The alley extends eastwardly to Madison Street, the curb of which street is opened to permit the passage of vehicles into and out of the alley from and to that street. The south end of the Kroger store does not extend back to the private alley. There is an "open area" between the Kroger store and the north line of the alley and between the offset and the west sidewalk of Madison Street. It seems there is no demarkation of limits or level of the offset, or of the open area or of the alley.

An elevator shaft is located at the north end of the offset or loading dock and within the building housing the hardware store. Ingress and egress between the loading dock and the elevator shaft is through solid-paneled double doors of total width 4 feet 5 inches. It was through the west door (of the double doors) that plaintiff, intending to go into the hardware store, passed from the offset or loading dock and walked into the elevator shaft. It is 27 feet 9 inches from the elevator doors around to the rear-entrance door of the hardware store.

The elevator shaft extends down to a level two feet below the basement floor. The elevator is not for passengers. It is used to move freight and merchandise from and between the basement and the first and second floors and the loading dock. The level of the loading dock is 18 inches to 2 feet above the first-floor level of the hardware store.

Plaintiff, 72 years of age, had transacted business with defendant for twelve or fifteen years. During some periods of the year he went to defendant's stores several times a week, and during other periods several times a month. On several occasions he passed from the hardware store to the furniture store using the rear door of the hardware store, but he did not like to do so because in approaching the rear door from the inside of the store one must walk up a ramp to reach the ground level of the alley beyond, but he had never retraced his steps and never before entered either store from Madison by way of

the alley and open area between the Kroger store and defendant's furniture store.

August 28, 1945, the day he was injured, plaintiff had occasion, being in an automobile on Madison, to approach the hardware store. He needed a new ladder and was going there to buy one. It was the first time he had driven his automobile into the private alley. Parking space on the street was scare, "and I said to myself that I'd drive in the driveway. I had seen other trucks there, and I said I'd drive in there [414] and pick up a ladder and go on out." He drove in through the alley and parked his automobile, headed westwardly, "pretty close" to the north wall of the furniture store and walked around the rear of his car. The left (west) of the double doors leading to the elevator shaft was standing open "better than ninety degrees." The right door was closed. "I walked over toward the hardware store where a door was open and I thought that was the entrance of the hardware store and I walked in there." It was around one o'clock in the afternoon and the sun was shining, but the area around these doors was somewhat shaded by the overhead passage. Approaching the elevator doors, plaintiff "was looking" but saw nothing ahead of him. The inside of the shaft was "very gloomy." Inside the rear door of the hardware store it is "very gloomy." Plaintiff did not stop to look before he walked into the shaft because he thought he was in the hardware store. "I was walking at a normal rate of speed and I walked into the elevator shaft thinking it was the door to the hardware store. It (rear door to the hardware store) had an inclined ramp and before I knew it I was in the elevator shaft." There was no warning sign, no barricade or fence, no gate, no artificial light at or inside the unlocked elevator doors. Plaintiff fell "ten or twelve feet" to the bottom of the elevator shaft and was seriously injured.

After plaintiff's injury, he expostulated with defendant as follows, "why don't you have your elevator guarded? Someone is going to be killed." Defendant replied, "It's one of those things. I always worried about the elevator especially when children were around the building. Someone almost stepped into it, but nothing like this happened. I told my men to keep the doors locked, but this time someone forgot."

Other evidence will be stated in the course of the opinion.

Of course, plaintiff, a prospective customer of defendant's store, was an invitee in the sense that his approach to the store was for a purpose of interest and benefit mutual to plaintiff and defendant. In this sense plaintiff was an invitee as distinguished from a licensee who solely for his own purpose enters upon land at the sufferance of the owner, as did the plaintiffs in the cases of Porchey v. Kelling, 353 Mo. 1034, 185 S. W. 2d 820; Stevenson v. Kansas City Southern R. Co., 348 Mo. 1216, 159 S. W. 2d 260; Boneau v. Swift & Co.,

Mo. App., 66 S. W. 2d 172, cited by defendant. But was plaintiff, a prospective customer, invited by defendant, occupant of a building and proprietor of a store, to use the alley, open area and rear door of the building in approaching the store—was plaintiff's intended use of the rear door as a means of entrance within the scope of the invitation? It has been said the invitation cannot be enlarged by the customer to include parts of the premises to which the invitation does not extend. Menteer v. Scalzo Fruit Co., 240 Mo. 177, 144 S. W. 833.

No evidence was introduced tending to show defendant had expressly invited customers to come into the hardware store through the back entrance, nor was there evidence that defendant had expressly invited customers to drive their automobiles into the alley and park when approaching the store. Such an invitation does not have to be express, however. Gilliland v. Bondurant, 332 Mo. 881, 59 S. W. 2d 679. The word "invitation" as used in considering the legal duty of an owner or occupant of land to another who enters upon the property is not an invitation in a popular but in a legal sense, and includes an invitation implied by any state of facts upon which it naturally and reasonably arises. Kennedy v. Phillips, 319 Mo. 573, 5 S. W. 2d 33; Glaser v. Rothschild, 221 Mo. 180, 120 S. W. 1. An implied invitation is "one which is held to be extended by reason of the owner or occupant doing something or permitting something to be done which fairly indicates to the person entering that his entry and use of the property is consistent with the intentions and purposes of the owner or occupant, and leads him to believe that the use is in accordance with the design for which the place is adapted and allowed to be [415] used in mutuality of interest." 45 C. J., Negligence, Sec. 220, pp. 809-810; Gilliland v. Bondurant, supra; Glaser v. Rothschild, supra; Evans v. Sears, Roebuck & Co., Mo. App., 104 S. W. 2d 1035.

The principal or main entrances to defendant's stores were on the public streets, Dunklin and Madison. However, the evidence shows that some of the residents of the neighborhood and others, who knew about the rear door to the hardware store, used the door when as customers they entered the store. Although defendant knew of this practice he had never told anyone not to walk in the back way; "I guess I could put up a sign not to come in there, but we want the business." There were not many customers who came in the back way, perhaps "one or two percent." It may be inferred there was more than an occasional use of the rear door by customers entering the store. And customers could drive into the alley to "pick up" purchases. A certain percent of customers "drive in . . . I imagine the largest part of our customers don't know about it, but some do. If they have cars they drive in." Nor were there any signs prohibiting the use of the alley and adjacent open area as an approach, and the alley and open area were in such position in relation to the

rear of the store as to make it natural for customers (pedestrians and motorists) coming from Madison Street to use the alley and open area as an approach to the rear entrance of the store.

In our opinion there was substantial evidence tending to show prospective customers were impliedly "invited" to approach defendant's store by way of the rear entrance and, in so doing, to use the private alleyway for the parking of cars. Having invited customers · to enter the rear door of his store, defendant owed plaintiff the duty to exercise ordinary care to have the approach to the door in a reasonably safe condition.

The "owner or occupant of land who, by invitation, express or implied, induces or leads others to come upon his premises, for any lawful purpose, is liable in damages to such persons—they using due care—for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist, without timely notice to the public, or to those who were likely to act upon such invitation." Bennett v. L. & N. Railroad Co., 102 U. S. 577; Carleton v. Franconia I. & S. Co., 99 Mass. 216; Vogt v. Wurmb, 318 Mo. 471, 300 S. W. 278; Cameron v. Small, Mo. Sup., 182 S. W. 2d 565. And where a store or other business establishment to which the public is impliedly invited has a door leading to an elevator shaft or other dangerous place which is left unfastened and "which, from its location and appearance, may be mistaken for a door which a member of the public on the premises is entitled to use, the proprietor is liable to a person who by mistake passes through that door and is injured." 38 Am. Jur., Negligence, Sec. 135, p. 796; English v. Sahlender, Mo. App., 47 S. W. 2d 150; Carraway v. Long, 7 Mo. App. 595; Downing v. Merchant's National Bank, 192 Ia. 1250, 184 N. W. 722, 20 A. L. R. 1138. See also cases collated in Annotations, 20 A. L. R. 1147; 27 A. L. R. 585; 42 A. L. R. 1098.

As an invitee passes from Madison Street over the alley or open area in going toward the rear of defendant's hardware store, the rear door cannot be so readily seen as can the elevator-shaft doors. For example, having parked his automobile in the private alleyway and having passed around the rear end of his car, plaintiff's line of vision to the westward was almost parallel with the wall containing the rear door of the hardware store, and from such a point the rear door would have been at best but imperfectly visible to him. On the other hand, the double elevator-shaft doors could be readily and plainly seen by an invitee in approaching the rear of the store through the alley or over the open area. The elevator-shaft doors were indeed readily seen by plaintiff. They were plainly within his casual view to the northeastward. In appearance the elevator-shaft doors were not like the rear-entrance door; but there was no mark or sign on or near the elevator-shaft doors and nothing in [416] their appearance indi-

cating they were not entrance doors to the rear of defendant's store. Should it not have been anticipated, in the exercise of ordinary care, that an invitee in so approaching the store (especially an invitee such as plaintiff, who was not familiar with the exterior of the rear-entrance door) might reasonably mistake the elevator-shaft doors for the rear door?

In our opinion the evidence was sufficient and substantial in supporting a reasonable inference of negligence in the maintenance of the unlocked, unguarded elevator-shaft doors, in their shown setting, without any warning of the danger.

Was plaintiff contributorily negligent as a matter of law? Due care requires precautions commensurate with the dangers to be apprehended. As an invitee, plaintiff had a right to assume the approaches to defendant's stores were reasonably safe. As we have hereinbefore said, it seems reasonable to us that an invitee might, in the circumstances, mistake the elevator-shaft doors for the rear entrance of the store. We have observed there was evidence tending to show the west door of the double elevator-shaft doors was open. The open door, if not an invitation to enter, was certainly not a warning of danger. There were no guards or barricades or signs indicatory of the presence of an elevator shaft within the door. This is not like a case where a plaintiff had stepped into a dark elevator shaft, knowing the shaft was there, without looking to see whether the elevator was at the floor level in the same position as he had left it an hour and a half before, as did the plaintiff in the case of Bonanomi v. Purcell, 287 Mo. 436, 230 S. W. 120, cited by defendant. Plaintiff did not know there was an elevator shaft in the defendant's store. Plaintiff, an invitee, had no reason to expect and no duty to take extraordinary precautions against a danger unknown and not obvious to him and of which he had not been warned. There were no artificial lights in or about the shaft or its doors, and the shaft was "very gloomy." In the situation it could not with certainty be said the open elevator shaft would have been obvious to one in the exercise of ordinary care. It is our view the question whether plaintiff was contributorily negligent was for the jury. Cameron v. Small, supra; Kennedy v. Phillips, supra; Geninazzi v. Leonori, Mo. Sup., 252 S. W. 417; Downing v. Merchants' National Bank, supra.

The order granting the new trial should be affirmed and the cause remanded.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.