Steven Edward GAYER, a Minor, by Gerald T. Stubblefield, His Next Friend (Plaintiff), Appellant,

v.

J. C. PENNEY COMPANY, Inc., a Corporation (Defendant), Respondent.

No. 30152.

St. Louis Court of Appeals.

Missouri.

July 21, 1959.

Rehearing Denied Aug. 24, 1959.

Hall, Reaban & Seigel, Morie B. Soule, St. Louis, for appellant.

Hocker, Goodwin & MacGreevy, Wayne L. Millsap, St. Louis, for respondent.

DOERNER, Commissioner.

Action for damages for personal injuries alleged to have been sustained when a piano in defendant's store fell on plaintiff. Plaintiff had a verdict and judgment below for $5,000. Defendant filed a motion for judgment in accordance with its motion for a directed verdict or in the alternative for a new trial. The trial court sustained defendant's motion for a judgment, without specifying the ground or grounds therefor, vacated the judgment for plaintiff, entered judgment for defendant, and overruled the motion for a new trial, whereupon plaintiff appealed.

Defendant's motion for a judgment in accordance with its motion for a directed verdict specified nine grounds upon which such action was prayed. It is urged by appellant that the trial court erred in failing to specify the ground or grounds on which it sustained defendant's after trial motion for a judgment. In the light of the decision of this court in Bean v. St. Louis Public Service Co., Mo.App., 233 S.W.2d 782, the point may be well taken. Such error, however, does not require a reversal of the judgment. 42 V.A.M.S. Rule 1.10 of the Supreme Court, upon which plaintiff relies, provides that if a trial court grants a motion for a new trial without specifying of record the ground or

grounds on which the new trial is granted, the presumption shall be that the trial court erroneously granted the motion for new trial and the burden of supporting such action is placed on the respondent. If, as appellant contends, that rule is applicable to an after trial motion for judgment, as well as to a motion for a new trial, the only effect of the failure to specify the ground or grounds is to raise a presumption that the trial court acted erroneously, and to place the burden of supporting its action on the respondent.

Although in its after trial motion for judgment defendant stated nine grounds upon which it sought such relief, in its brief it has advanced but one ground in support of the action of the trial court, that the plaintiff did not make a submissible case. Hence, as in the Bean case, supra, we are not called upon to test each of the nine assignments to determine which, if any, support the ruling of the court below, but our review of the trial court's action is confined to the sole ground urged by defendant.

Whether plaintiff made a submissible case calls for the facts. Plaintiff, ten years old on the day of the accident, November 3, 1955, was first driven to the Woolworth store in Wellston, Missouri, by his father, where plaintiff purchased some earrings for his mother. The father then drove the plaintiff to defendant's store in the same city and left plaintiff. Mrs. Stubblefield, plaintiff's mother, who had been divorced from plaintiff's father and had remarried, was employed by defendant as a shoe buyer. Plaintiff testified that upon entering defendant's store he proceeded to the shoe department, where his mother worked, to tell her that he was in Wellston. Thereafter, according to his testimony, he went to the toy department in defendant's store, called Toyland, where he looked at toys. He then returned to his mother to obtain some money from her, went back to Toyland to see if a certain game was for sale, and not finding it, plaintiff left

the defendant's store and went to the dime store, where he purchased the game. Following that purchase, he returned to Toyland in defendant's store, and then went up to the shoe department, intending to ask his mother for more money.

According to the plaintiff, upon reaching the shoe department he did not find his mother, and he inquired of a Miss Riley, a clerk in that department, as to his mother's whereabouts. Plaintiff testified that Miss Riley told him his mother was in the stock room and that it was all right for him to go back to get her. He went through a curtained doorway, stood inside of the doorway and called to his mother, and upon receiving no answer, went into the stock room, and called his mother several more times. Still receiving no answer, plaintiff testified he turned to leave the storeroom, and in doing so his clothes brushed up against a piano which fell upon him, injuring his right foot.

Plaintiff's evidence further showed that the piano was used in connection with the defendant's store meetings, customarily held in the shoe department each Thursday morning, and that ordinarily the piano was stored in the basement. Mrs. Stubblefield testified that instead of being returned to the basement after the meeting on the previous Thursday, however, the piano had been kept in the storeroom for a week; that the piano had only three legs, and in lieu of the missing fourth leg a block of wood was used; that a few days before her son's accident there was no block under the missing leg and the piano tilted against her while she was running stock; that she notified her immediate superior, Mr. Damon, the floor manager, to whom she was required to report, and urged that the piano be removed from the storeroom, because of its dangerous condition; and that on a later occasion the piano tilted against another employee, and she again reported it to Mr. Damon or one of the other managers, and renewed her suggestion that it should be removed.

Unfortunately, no photographs or diagram of the area in question are contained in the record before us. It is difficult to obtain a clear understanding of the relative locations of the sales area of the shoe department, the doorways to the shoe department stock room, and the stock room itself from the fragmentary and confusing descriptions testified to by the various witnesses. After a careful study of all of such testimony we gather that in proceeding from the sales area in which customers were waited upon one first encountered a counter or partition, behind which the cash register was kept. About four or five feet beyond the cash register was a second partition, extending almost to the ceiling, in which there were two doorways, one to the left and the other to the right of the cash register as one faced the register from the sales area. Upon entering the storeroom through either of these doorways one encountered shelves upon which the stock was stored, and, apparently, beyond the shelving and about 12 or 15 feet from the two doorways, the piano had been kept against a wall. There was also a third doorway into the stock room, some distance to the right of the foregoing doorway to the right of the cash register. Plaintiff's evidence was that there were curtains across all of the doorways and plaintiff testified that there was no door, but that there was a curtain in the doorway through which he entered the stock room. It is apparent from all of the testimony that there were no "keep out" or similar signs posted at the doorways.

Plaintiff's only evidence as to the presence of customers in the shoe stock room was that offered by his mother. Mrs. Stubblefield testified on direct examination that on occasion she had seen customers and other visitors go in and out of "those premises," presumably referring to the storeroom. On cross-examination she testified as follows:

"Q. Is it your testimony to this jury now that the public was freely allowed in and out of that stockroom? A. They went in and out.

"Q. Where did they go—the ladies' and men's room wasn't back there, was it? A. No, but the children would run through there and their parents would go after them.

"Q. How many times did you see people other than employees in that stockroom? A. I couldn't tell you the exact amount, but quite a few.

"Q. It was always chasing after their children? A. Yes, sir."

Later she added that sometimes customers would follow a clerk back into the stock room and try on a shoe as they were standing there, but admitted that the display racks were in the other part of the store. Plaintiff testified that he had been to defendant's store before but that he had never been in the stock room, and Mrs. Stubblefield testified that plaintiff had never entered into the stock room farther than to stand immediately inside the doorway. The testimony of all of defendant's witnesses was to the effect that customers were never permitted in the stock room.

It is plaintiff's contention that plaintiff's status in defendant's store was that of an invitee in that he was on the premises for the purpose of purchasing a toy. This conclusion is by no means certain. It is true that he testified that he entered defendant's Toyland the first time "* * * to see if they had this game * * *," but it is apparent from his testimony that failing to find the game he desired he left the defendant's store to go to the dime store, where he made his purchase. His testimony continued:

"* * * right after that I went down to Toyland again in the J. C. Penney Company and then went from there up to the shoe department to see my mother to ask her for some more money * * *."

Why the plaintiff wanted more money is by no means clear. Having made one pur-

chase in the dime store, after failing to find what he wanted in defendant's store, it would not necessarily follow that plaintiff wanted the additional money from his mother to make a purchase in defendant's Toyland. This is particularly true in the light of the fact, as testified to by Mrs. Stubblefield, that plaintiff's visits to the dime store and Toyland had consumed a period of about three hours.

■■■ But even if it may be inferred that plaintiff desired the additional money in order to purchase a toy from the defendant's store, as plaintiff argues, it is clear that plaintiff was not an invitee at the time of the accident. One who enters the premises of a store as a prospective customer, for the purpose of purchasing goods there offered for sale, is a business visitor. Wilkins v. Allied Stores of Missouri, Mo., 308 S.W.2d 623; Wattels v. Marre's Tavern, Mo., 303 S.W.2d 9; Happy v. Walz, 358 Mo. 56, 213 S.W.2d 410. But the store owner's implied invitation to a prospective customer to visit his store is not an unlimited one, and extends only to those portions of the premises in which customers are permitted. Watson v. St. Joseph Coal Mining Co., 331 Mo. 475, 53 S.W.2d 895; Sherman v. Alexander & Sons, Mo.App., 108 S.W.2d 616; Ducoulombier v. Baldwin, Mo.App., 101 S.W.2d 96. As was said in Glaser v. Rothschild, 221 Mo. 180, 187, 120 S.W. 1, 3, 22 L.R.A.,N.S., 1045; 106 Mo.App. 418, 80 S.W. 332, the invitation does not give the prospective customer " * * * the right to roam at will, without further invitation, to out of the way places on the premises, * * * ". And when the customer exceeds the bounds of his invitation he becomes, at most, a mere licensee, and must take the premises as he finds them. Menteer v. V. Scalzo Fruit Co., 240 Mo. 177, 144 S.W. 833; Shuck v. Security Realty Co., Mo.App., 201 S.W. 559. The only duty which the store owner would then owe him would be to refrain from wilfully or wantonly injuring him. Porchey v. Kelling,

353 Mo. 1034, 185 S.W.2d 820; Ford v. Rock Hill Quarries Co., 341 Mo. 1064, 111 S.W.2d 173.

■■ The only conclusion which can be drawn from the evidence is that the stock room was an area of the store in which customers were not permitted. The physical facts as testified to by plaintiff and his mother, as well as the testimony of the witnesses for the defendant, clearly showed that there was a well-defined separation of the stock room from the sales area. Plaintiff's evidence, at best, merely showed an occasional impulsive straying by young children or an infrequent intrusion by customers. Plaintiff cites Hiken v. Wilson's Shoes, Mo.App., 317 S.W.2d 673 and Spurlock v. Union Finance Co., 363 Mo. 62, 248 S.W.2d 578, in support of his argument that he was an invitee when he entered the stock room, but the facts in those cases are entirely dissimilar. In the Hiken case a customer misunderstood the clerk's vague direction of the route to a dressing room, entered a dark stock room in her efforts to find the dressing room, and was injured when she fell down some steps. It was held to be a question for the jury as to whether, in view of the clerk's vague directions, the customer was an invitee. In the Spurlock case a customer was burned when he poured gasoline, which the used car salesman had given him to use, into the carburetor of an automobile he was inspecting, as his companion stepped on the starter resulting in the engine backfiring.

In the instant case plaintiff was not confused or unaware that the area he entered was one not open to customers, as in the Hiken case, for he knew from past experience that it was the stock room. Even when his mother had been present, on previous occasions, he had never entered into the room farther than immediately inside the doorway. Furthermore, his only purpose in entering the stock room was a purely personal one, to locate his mother to ask her for more money. The mere fact

that his ultimate purpose may have been, as plaintiff contends, to use the money to make a purchase in defendant's store did not authorize him to enter an area not open to the public, nor was he entitled to the status and duties owed an invitee when he entered therein. Nor would the fact that Miss Riley authorized or permitted plaintiff to enter the stock room in search of his mother make him an invitee when he entered the stock room. The distinction between one who is merely a licensee and one who is an invitee depends upon the nature and purpose of his visit. Porchey v. Kelling, supra. Assuming, without deciding, that Miss Riley did not exceed the scope of her authority when she authorized plaintiff to enter the stock room (and on that question see Roth v. J. N. Roth & Co., 363 Mo. 767, 253 S.W.2d 802) plaintiff was still merely a permissive licensee, in pursuit of his own purpose and business, when he did so.

The defendant also urges that the court below erred in permitting the plaintiff to submit his case on the theory of res ipsa loquitur, and in giving on behalf of the plaintiff Instruction No. 1. In view of what has been heretofore said as to the correctness of the action of the trial court in vacating the judgment for plaintiff and entering a judgment for defendant, it is unnecessary to pass upon those assignments.

The judgment should be affirmed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, the judgment is affirmed.

WOLFE, P. J., RUDDY, J., and MARSHALL CRAIG, Special Judge, concur.