Laura **GRUETZEMACHER**, Appellant,

v.

Mabel **BILLINGS** et al., Respondents.

No. 48385.

Supreme Court of Missouri,

Division No. 1.

July 10, 1961.

Rehearing Denied Sept. 11, 1961.

Lyng, MacLeod, Abels & Lyng, Russell N. MacLeod, St. Louis, for plaintiff-appellant.

Barnhart & Sommers, David G. Dempsey and Don B. Sommers, St. Louis, for defendants-respondents.

DALTON, Judge.

Action for damages for personal injuries sustained when plaintiff caught her left foot on a stake in defendants' flower bed on defendants' premises and fell and sustained serious injuries. Plaintiff's action was based on the theory that plaintiff was an invitee of defendants. Verdict and judgment were for plaintiff for $25,000, but the court set the verdict and judgment aside and entered judgment for defendants in accordance with defendants' after-trial motion for judgment in accordance with their motion for a directed verdict presented at the close of all the evidence. Plaintiff has appealed.

The evidence tended to show that plaintiff was a 74-year old, single lady, living with her sister at 4633a Shenandoah Avenue, St. Louis, Missouri, in a four-family flat on the north side of the street. To the west of this flat was another somewhat similar four-family flat, 4637 Shenandoah Avenue, owned by defendants, Mabel Billings, Chester D. Billings, her son and his wife, Mary A. Billings. The defendants occupied the two downstairs apartments and rented out the upstairs apartments. Between the two buildings was a grass plot extending from the street northwardly to an east and west fence that ran from the rear corner of one building to the rear corner of the other. At either end of this fence there was a gate which was attached to the respective buildings. These gates opened into the back yards, which were separated by a fence running north and south. The south end of this fence was attached to the mid-point of the east and west fence. In other words the back yards were enclosed and separated from one another. The front yard (to the south of the east-west fence) was neither separated nor enclosed. Each building had a concrete sidewalk about three or four feet wide leading from the street to the back yard and then to the back door. Plaintiff's walk was on the west side of the building in which she lived and defendants' walk was on the east side of their building. About six feet of lawn separated the two walks. The mentioned gates were located over the respective walks. The fences and gates were of open mesh, with wire up and down and across. ("It wasn't real close.") Both the plaintiff and Mrs. Mabel Billings maintained, or in the past had maintained, small flower beds between their buildings. Plaintiff's flower bed was south of and up against the east-west fence on her side of the property line and Mrs. Billings' was alongside of her own sidewalk and extended about six feet south of the east-west fence. "It wasn't really a bed, she just planted seed there." Plaintiff had noticed that the grass had grown up very tall in this area. The grass was 15 to 18 inches high.

On August 2, 1958 plaintiff was in her back yard hanging up clothes about noontime. In the back yard of defendants, three small children, two, three and four years of age, were playing. The oldest and youngest were the children of defendants Chester D. and Mary A. Billings, and the boy, who was slightly under three years of age (Keven McGill), was the son of Mrs. Mabel Billings' daughter Virginia, and the nephew of Chester and his wife. No one was watching the children, but according to plaintiff's evidence the defendants were at home. Plaintiff had cautioned the children once to stay away from the Billings' gate, saying: "They don't want you out there."

Plaintiff further testified as follows:

"I heard the child screaming, and I turned around to see what the matter was, and there was the little fellow (Keven) on the top of the fence, he was sitting on top the fence and his little tennis shoe was caught in the fence and he was screaming. I said, 'Wait a minute, honey, I'll get you down.' I hurried over there as fast as

I could, out the gate and over there and lifted him off. * * * I opened the gate and put him back, and I said, 'You stay there.' Then I turned around and started back to my own place, and I took two to three steps and then the grass was so tall, it had rained outrageous that week and the grass was so tall you couldn't see anything. I took one step with my right foot, and then I started to take another, but the stake caught me squarely, and I couldn't put my hand out,—

"Q. Was the left foot still on the concrete sidewalk? A. I didn't get off. I tried to get off, took the second, to step with the left foot, and I caught, I couldn't move it, and I just went over hard on my hip. * * * I was looking forward and sideways. I had to go forward and sideways to get across that space."

Plaintiff further testified:

"Well, here's the gate I took the little fellow and put him back there and started up this way, a couple of feet, and started over this way with my right foot, and started to put the left foot there, but it caught.

"Q. Now, did you put your right foot down? A. Yes, my right foot was down.

"Q. When you put your right foot down what did you put your right foot down into? A. The grass.

"Q. How deep was that? A. That's what I'm talking about, the grass was that high (indicating), right there.

*     *     *     *     *     *

"Q. When you had your right foot down in that position was Mrs. Billings' flower bed to your right, over in this direction from you (indicating)? A. Yes, sir.

"Q. At that time your left foot was still on the sidewalk; is that right? A. Yes.

"Q. Was it while you were raising your left foot up to take the next step that you stepped against something? A. Yes.

"Q. At that time did you see what that was? A. No, I don't think I did. I fell so hard and so suddenly. * * I took a minute to catch my breath and then I looked back to see that it was that stake just at the end of the flower bed.

*     *     *     *     *     *

"Q. Miss Gruetzemacher, now, at the time that you stepped into this grass, a foot or more tall, with your right foot, did you look to see if there was anything in the grass that you could stumble over or fall over? A. I didn't think I—well, I didn't think. It didn't occur to me to look at anything except there was grass there. I thought when my right foot went down it was all right.

"Q. It didn't occur to you to look before you stepped in there and fell, that's the truth of the matter, isn't it, ma'am? A. Well, I suppose—one foot went down all right and it seemed natural that the other one would follow.

*     *     *     *     *     *

"Q. Miss Gruetzemacher, I believe you stated before that your left foot was still on the pavement when it got caught? A. That's correct. I thought it was. It wasn't off the pavement. It might have got caught right as I was lifting it from the sidewalk."

Plaintiff further testified that there was nothing to have prevented her from walking along the defendants' sidewalk to a point beyond the Billings' flower bed and then to have crossed on the grass or lawn area, except that it would have been out of her way. "It would be an unnormal thing

to do." When plaintiff looked back after she fell, she could see the stake in the flower bed. The grass had been trampled by her falling and she could see the cause of her fall. She said to Mrs. Billings, who had come to her assistance, "I fell over that stake." The stake was about four inches wide and six or seven inches high. Mrs. Billings pulled up the stake and threw it away. The tall grass was just in the flower bed area, since the lawn area was mowed about like it was shown in the photograph. "I guess it was something like that."

Plaintiff offered other evidence tending to show that there was another stake at the east side of the Billings' flower bed. It was a square stake about one and a half to two inches wide. Mrs. Mabel Billings, called as a witness for plaintiff, testified that whatever stakes were in the flower bed she had placed there for fear that her son would cut the flowers off with the lawn mower. Some bricks separated plaintiff's flower bed from that of defendants. The east stake was close to the bricks. There was conflicting evidence as to whether there was more than one stake in the flower bed. Plaintiff also offered a part of defendant Chester D. Billings' deposition to the effect that he knew there had been a stake or two in his mother's flower bed.

■ Error is assigned on the action of the court in setting aside the verdict of the jury and entering judgment for defendants in accordance with defendants' motion for a directed verdict presented at the close of all the evidence. Appellant insists that the only issue on this appeal is whether plaintiff was an invitee or a licensee when she was on defendants' premises. She contends that the judgment entered for defendants was based solely on the ground that plaintiff was a mere licensee and not entitled to the status of an invitee. Appellant says the trial court erred (1) in ignoring the factual situation shown by her evidence which disclosed an implied invitation to plaintiff to enter upon defendants' premises; (2) in holding that plaintiff was a licensee rather than an invitee; (3) in holding that, because a rescue was involved, plaintiff could not have a greater status than that of the rescued; and (4) in holding, in effect, that the "benefit" to the owner must be of a financial or commercial nature. Appellant directs particular attention to the trial court's "memorandum opinion", which was filed and made a part of the record. Much of appellant's brief is devoted to an attack upon the views expressed therein, but we are not particularly concerned with the reasons assigned by the court for its order setting the verdict and judgment aside and entering judgment for defendants, because, if the judgment entered was for the proper parties, it will not be set aside on appeal even if the court gave a wrong or insufficient reason for entering it. Spiking School Dist. No. 71, DeKalb County v. Purported "Enlarged School Dist. R–11, DeKalb County, Mo.", 362 Mo. 848, 245 S.W.2d 13, 17; Huttig v. Brennan, 328 Mo. 471, 41 S.W.2d 1054, 1062.

In her petition plaintiff alleged that, at the invitation of defendants, she was walking upon their premises at the time she was injured. She contends that her evidence showed "facts which 'naturally and reasonably' gave rise to an invitation to enter defendants' premises"; that her entry was "not made out of 'curiosity or private convenience', but 'for a purpose which is, or is supposed to be, beneficial to the owner'"; and that she submitted her case to the jury by an instruction requiring a finding that "defendants were negligent in placing a stake which projected over and above the concrete walk on their premises so as to make the sidewalk dangerous and not reasonably safe." She argues that her evidence was sufficient to support a finding that "while her left foot was still on the sidewalk it came up against a stake driven in at the edge of defendants' walk *in such a way that it projected over the traveled portion of the walk.*" (Italics ours.)

■ In view of the issues here presented we consider the evidence in a light favor-

able to the plaintiff and give her the benefit of all favorable inferences reasonably to be drawn from all of the evidence, and we disregard defendants' evidence unless it aids the plaintiff's case, however, we find no evidence in the record to support an inference or a finding that the stake was driven in at the edge of defendants' walk *in such a way that it projected over the traveled portion of the walk,* nor is there any evidence tending to show that the Billings' sidewalk was dangerous or unsafe for use in the usual and ordinary manner in which it was intended to be used, to wit, for passage along the way between the gate and the street. Nor would the evidence sustain a finding that any negligence of defendants caused the child to be in peril on the fence, even though no one was "down watching the children at the time they were in the back yard", or when Keven climbed upon the fence.

In support of her contention that she occupied the status of an invitee on defendant's premises at the time she was injured, appellant cites and relies upon the following authorities: Glaser v. Rothschild, 221 Mo. 180, 120 S.W. 1, 22 L.R.A.,N.S., 1045 (plaintiff, a business visitor); Porchey v. Kelling, 353 Mo. 1034, 185 S.W.2d 820 (licensee); McVicar v. W. R. Arthur & Co., Mo.Sup., 312 S.W.2d 805, 65 A.L.R.2d 785 (trespasser); Stevenson v. Kansas City Southern Ry. Co., 348 Mo. 1216, 159 S.W.2d 260 (not an invitee or business visitor); Anderson v. Cinnamon, 365 Mo. 304, 282 S.W.2d 445, 55 A.L.R.2d 516 (fireman-licensee); Nastasio v. Cinnamon, Mo.Sup., 295 S.W.2d 117 (off-duty fireman—licensee); 65 C.J.S. Negligence § 43[3] [b], p. 511 (implied invitation—benefit to owner or occupant).

Respondents, on the other hand, insist that the judgment should be affirmed "because: (a) there was no invitation extended from the defendants to the plaintiff to enter upon defendants' property; (b) the defendants had no knowledge of, or opportunity to anticipate, the entrance upon their property by the plaintiff; (c) the de-

fendants had no opportunity to correct or eliminate any dangerous condition or defect upon their property prior to plaintiff's entry; (d) the defendants had no opportunity to warn plaintiff of any dangerous condition which might have existed; and (e) under the facts of the case the plaintiff was a welcome visitor, but in law a 'volunteer'."

Respondents further contend that plaintiff's implied invitation, if any, to come upon defendants' property was not "in connection with some business of the defendants, or in the furtherance of the defendants' financial interest"; and that her legal relationship to defendants was no more than licensee. Wolfson v. Chelist, Mo.Sup., 284 S.W.2d 447, 452. Respondents also say that plaintiff was guilty of contributory negligence as a matter of law "in choosing to take a hazardous route to her own yard, when a perfectly safe way for her to go" was equally available.

Appellant does not contend that she was a business visitor on defendants' premises, and we find it unnecessary to determine whether plaintiff offered sufficient evidence to sustain a finding that she had acquired the status of an invitee at the time she entered upon defendants' premises because, even if the plaintiff occupied the status of an invitee when she entered defendants' premises, she did not occupy that status at the time she was injured and the evidence fails to show any breach of any duty owed by defendants to plaintiff, or that defendants were negligent with respect to her.

As stated, plaintiff's evidence shows that there was a stake at either side of defendants' flower bed; that the bed was about three feet wide and six feet long; that "It had rained fearfully that week and everything that had half a chance to grow, grew"; and that the grass in defendants' flower bed along the side of their concrete walk was 15 to 18 inches high. "The grass was so tall you couldn't see anything" and plaintiff did not see the stake in the west side of the flower bed

until after she had fallen and trampled the grass by her fall. However, the presence of stakes six or seven inches high in a flower bed did not indicate any unusual condition not reasonably to be expected. Plaintiff's evidence shows that the stakes were placed there to protect the flowers.

Plaintiff's evidence further shows that, when she placed the child in defendants' back yard and closed the gate, she turned around and started back to her home. At one place she said she took "two or three steps" and at another place she said she started up "a couple of feet" before turning and undertaking to walk through defendants' flower bed to her home. Only a few feet further south she could have crossed on the lawn area, where the grass was mowed. She estimated the length of defendants' flower bed at only six feet, but said it would have been out of her way to go around it. She stepped safely into the bed with her right foot, but when she undertook to bring up the left foot it caught on the stake at the edge of the flower bed and she was caused to fall and be injured. She was in the act of completing her intentional entry into the defendants' flower bed for the purpose of crossing through it, when she fell and was injured. She had already stepped down safely into the deep grass with her right foot and was bringing up the left foot when she stumbled over the stake and fell. Plaintiff was not using the area in the manner "it obviously was intended to be used" at the time she fell and was injured.

■ We find no evidence tending to show that the flower bed was ever intended for use as a walkway or as a passageway between the two apartment buildings or otherwise, or that it had ever been previously used by plaintiff or anyone else for such a purpose, or that defendants had any reason to anticipate that it might be so used by plaintiff on this or any other occasion. Negligence which imposes liability must result from a faulty or defective foresight. Negligence is predicated on what should have been anticipated and not merely on what has happened. McCollum v. Winnwood Amusement Co., 332 Mo. 779, 59 S.W.2d 693, 697(5–6).

There was no evidence that defendants had any knowledge of plaintiff's presence on the premises at the particular time in question or knew or should have known that plaintiff expected to use the flower bed as a walkway to return to her apartment. The use which plaintiff was making of defendants' flower bed was in excess of the reasonable scope of any implied invitation to come upon defendants' premises and in excess of any use reasonably to have been anticipated by defendants. No evidence was offered which would, under the authorities hereinafter referred to, tend to impose a duty on defendants to warn plaintiff of the presence of stakes in their flower bed, or impose a duty on defendants to place a warning sign upon or about this grassy flower bed, such as "Danger!" or "Don't Walk Through Here."

■ In any event liability to an invitee does not result alone from (1) ownership or occupancy, (2) invitation, express or implied, and (3) injury, because the owner or occupant is not an insurer of the safety of even a business invitee. Schmoll v. National Shirt Shops of Mo., 354 Mo. 1164, 193 S.W.2d 605, 607; Lindquist v. S. S. Kresge Co., 345 Mo. 849, 136 S.W.2d 303, 305. "The basis of his liability is his superior knowledge of an unreasonable risk of harm of which the invitee, in the exercise of ordinary care, does not or should not know." Harbourn v. Katz Drug Co., Mo.Sup., 318 S.W.2d 226, 229.

■ The law governing the liability of storekeepers and other possessors of land to business visitors is clearly set forth in 2 Restatement, Law of Torts, Sec. 343, p. 938, as follows: "A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if

known to him, he should realize as involving an unreasonable risk to them, and (b) has no reason to believe that they will discover the condition or realize the risk involved therein, and (c) invites or permits them to enter or remain upon the land without exercising reasonable care (1) to make the condition reasonably safe, or (2) to give a warning adequate to enable them to avoid the harm * * *." This statement of the law has been repeatedly approved by this Court. Summa v. Morgan Real Estate Co., 350 Mo. 205, 165 S.W.2d 390, 391; Devine v. Kroger Grocery & Baking Co., 349 Mo. 621, 162 S.W.2d 813, 818; Wilkins v. Allied Stores of Missouri, Mo.Sup., 308 S.W.2d 623, 628. Conversely, as stated in Ivory v. Cincinnati Baseball Club Co., 62 Ohio App. 514, 24 N.E.2d 837, 839 the rule, as applied to a place of business, is that "the invitor is not an insurer of the safety of the invitee; neither is the invitee protected against all hazard, nor relieved of all duty to himself for his own safety. And to the extent that the duty of self-protection rests upon the invitee, the duty of the invitor to protect is reduced. The extent of these relative duties depends upon many factors involving the capacity and opportunity of the invitor to protect the invitee and the capacity and opportunity of the invitee to protect himself." And see Hudson v. Kansas City Baseball Club, 349 Mo. 1215, 164 S.W.2d 318, 321, 142 A.L.R. 858.

Appellant cites and particularly relies upon the case of Glaser v. Rothschild, supra, 120 S.W. 1, 4, which quotes from other cases and clearly approves a statement of law to the effect that the application of the rule (as to the liability of the owner or occupier of business premises to an invitee) "always depends upon the particular facts and circumstances of the case under consideration. The owner's liability for the condition of the premises is only coextensive with his invitation. And it is incumbent upon the plaintiff to show, not only that her entry upon the premises was by invitation of the owner,

but also that *at the time the injury was received, she was in that part of the premises into which she was invited to enter, and was using them in a manner authorized by the invitation, whether express or implied.*" (Italics ours.)

This rule is stated in 65 C.J.S. Negligence § 48, p. 535, as follows: "The duty to keep premises safe for invitees or business visitors does not necessarily apply to the entire premises, and there is no duty with respect to the safety of portions of the premises which are not included within the invitation, *such as portions of the premises which are not intended for the use of the invitee and where he should not reasonably be expected to go.*" (Italics ours.) And see Ducoulombier v. Baldwin, Mo. App., 101 S.W.2d 96, 101; Sherman v. Alexander & Sons, Mo.App., 108 S.W.2d 616, 620(2); Gayer v. J. C. Penney Co., Mo.App., 326 S.W.2d 413, 417(2–5). When an invitee steps beyond the bounds of his invitation he becomes a mere licensee at most, "and must take as he finds it the part of the premises he then enters." Menteer v. Scalzo Fruit Co., 240 Mo. 177, 144 S.W. 833, 835. "The portion of the premises to which the invitation extends is to be determined from all the facts and circumstances existing at the time of the injury * * *." 65 C.J.S. Negligence § 48, p. 537. In this case these facts are not in dispute since they are fully shown by plaintiff's own testimony.

In the case of Philibert v. Benjamin Ansehl Co., 342 Mo. 1239, 119 S.W.2d 797, 800, the court said: "There can be no argument on the correctness of the proposition that an invitee cannot recover when injury occurs at a place on the premises where he has no express or implied right to be. An invitee to the premises of another has the right to go to 'all portions of the premises which are included within the invitation and it is necessary or convenient for the invitee to visit or use in the course of the business for which the invitation was extended, and at which his presence should therefore reasonably be

anticipated.'" And see Watson v. St. Joseph Coal Mining Co., 331 Mo. 475, 53 S.W.2d 895, 897; Glaser v. Rothschild, supra. The use of property for purposes outside the scope and purpose of the invitation, or for which the property was not designed to be used, and the use of property by an invitee for purposes for which the possessor could not reasonably have anticipated the property would be so used, imposes no duty on the owner or person in charge of the premises.

"One who enters a private residence even for purposes connected with the owner's business, is entitled to expect only such preparation as a reasonably prudent householder makes for the reception of such visitors." Restatement of Law of Torts, Comment (e), under ¶343, p. 943. On this basis it could not be said that even the expected presence of a business invitee would have required defendants to have either mowed the weeds and grass in the three by six flower bed or to have removed the stakes thereon in anticipation that such visitor might use the flower bed as a means of ingress or egress to defendants' premises, when better and safer ways were easily available.

The facts testified to by plaintiff as to the condition of defendants' flower bed leave no room for an inference that her implied invitation, if any, to enter the premises of defendants under the facts shown, included an invitation to use the flower bed as a pathway to return to her home when a more suitable way was immediately available. While it has been stated that an "invitation may be implied by a dedication, or it may arise from known customary use" (Glaser v. Rothschild supra), in this case there is no evidence that the flower bed had ever been dedicated for use as a way or that it had been customarily so used. No inference can be drawn from the facts in this record that the presence of these stakes in this flower bed should have caused a reasonable person to realize that the existing condition involved an unreasonable risk of harm to anyone on the premises. Injury to some one from the conditions shown was not reasonably foreseeable. Mann v. Pulliam, 344 Mo. 543, 127 S.W.2d 426, 427. The violation of no duty to plaintiff appears from the evidence presented, because when plaintiff voluntarily undertook to pass through defendants' flower bed under the circumstances shown, she occupied no status other than that of a licensee, who takes the premises as he finds them, except for wantonness or some form of intentional wrong or active negligence of the possessor. Anderson v. Cinnamon, supra, 282 S.W.2d 445; Stevenson v. Kansas City Southern Ry. Co., supra; Porchey v. Kelling, supra.

The judgment is affirmed.

All concur.