WILLIAM WATSON v. THE ST. JOSEPH COAL MINING COMPANY, Appellant.—53 S. W. (2d) 895.

Division One, October 22, 1932.*

R. H. Musser, Lavelock, Kirkpatrick, Clark & Garner for appellant.

*NOTE: Opinion filed at April Term, 1932, September 3, 1932; motion for rehearing filed; motion overruled at October Term, October 22, 1932.

476

*Pross T. Cross, Clay C. Rogers* and *Gerald Cross* for respondent.

HYDE, C.—This is an action for damages for personal injuries sustained by plaintiff, while on defendant's premises. Defendant operated a coal mine at Vibbard, in Ray County. Plaintiff lived at Vibbard and worked as a section hand, on the Santa Fe Railroad, and as a farmhand in that locality. His evidence was that he asked William Clevenger, a coal miner in defendant's mine, to ask Mr. Schooler, the foreman of the mine, to give him work there. Plaintiff, at that time, was putting up hay on Clevenger's farm. Clevenger asked Schooler if he could give plaintiff a job and Schooler said he thought he could and to "tell him to come down and I will put him to work." Schooler also said that he had a man spoken for to crack coal, but if it took two men he would give him a job; that he could give him work cracking coal; and that he was having trouble keeping men working at it, as it was so hard they could not stand it. Clevenger told Schooler that plaintiff "was out all summer in the sun" and Schooler said: "He thought he could do the work." Clevenger told plaintiff that "Mr. Schooler told him to come out; he would give him a job." A day later plaintiff went out to the mine.

Defendant's mine was located, on the Santa Fe Railroad, one-half mile south of Vibbard station. The main line track ran past the mine

from northwest to southeast. From just north of the mine, a switch track went due south, along the east side of the mine, within 10 to 15 feet of the shaft tower, which was a structure built over the mine shaft. The entrance to the shaft, used by the miners to go into the mine, was on the west side of this building. There were gates in front of this entrance and above it was a sign which read: "Danger, Keep Away From Here." On the south side of the shaft tower were steps, which led up to the weigh master's office, about 10 feet above the ground. Cars of coal were brought up the shaft, in an elevator or cage, and were there weighed. They were then run out on a track, above the railroad switch, dumped into railroad cars, taken back into the shaft tower, and returned to the mine. Above this elevated coal car track was another track, 25 or 30 feet high, which ran out of the east side of the shaft tower, across the railroad switch, onto a dump located between the railroad switch and the main line track. Cars of rock, from the mine, were elevated to the level of this track and run out on it, above the railroad switch, and dumped between the two tracks. West from the north side of the shaft tower, there was an engine house, in which were located the engines operating the machinery in the shaft tower. South of the shaft tower, there was a wash house, which the miners used when they came out of the mine. So far as the evidence shows, these were the only buildings on the premises.

Plaintiff said he had never been to the mine before and had no knowledge of how it was entered. He walked south down the railroad track from Vibbard until he came to the switch track. There he followed a path which went southwest between the shaft tower and the engine house. He saw no one, on the west side of the shaft tower, and went on around to the south side where he found the steps leading to the weigh master's office. He went up these steps, found the weigh master, and asked him where Mr. Schooler was. Plaintiff said he replied as follows: "He said he was in the bottom" (meaning in the mine). "He said, you go down and he will be out in a little bit." "He told me I would break coal in the car with Mr. Adams." Plaintiff then went down the steps and around on the east side of the shaft to the railroad coal car where Adams was breaking coal. He got up on the end of this car and asked Adams where Schooler was. "He said he was in the bottom but was liable to be out at most any time." With his arms resting on the edge of the car, plaintiff stood on the south end of the coal car in which Adams was working, and talked to him about the work. This coal car was directly under the rock car track, which ran from the shaft tower to the dump, but plaintiff said he had not even noticed that there was an overhead track there. Plaintiff had not been there more than three to five minutes when a car loaded with rock was run out of the shaft tower,

on this overhead track, and a large rock weighing 50 to 75 pounds fell and struck plaintiff's left arm. Plaintiff's arm was so badly mashed that it had to be amputated.

It was shown that the mine was short of cars for taking out rock; that under the instructions of the mine foreman, the miners had been loading the cars as full as possible; and that the car, out of which the rock fell, was loaded so full that pieces of rock were hanging over the sides. Defendant introduced evidence tending to show that plaintiff was loafing around the mine and had not come there on business. The jury found for plaintiff for $9,000. Defendant has appealed from the judgment, entered on this verdict, but no question is raised as to the amount of the verdict.

■ Defendant contends that the court should have sustained a demurrer to the evidence and complains of certain instructions given at the request of plaintiff. Defendant first contends that plaintiff was not upon its premises as an invitee, but was a mere licensee. Defendant made this same contention, before the Kansas City Court of Appeals, after the first trial in this case which resulted in a judgment for plaintiff for $4,500. That court held that plaintiff was an invitee. [Watson v. St. Joseph Coal Mining Co., 5 S. W. (2d) 122.] We think that holding was correct and that there is ample evidence in the present record, to show that plaintiff went upon defendant's premises, at its invitation, to enter its employ and that he was, therefore, an invitee.

■ Defendant, however, contends that even if plaintiff was an invitee the evidence conclusively shows that he went to a place which was not included in the terms of his invitation. Defendant says, further, that plaintiff pled an express invitation to visit a definite portion of the mine, for a definite purpose, by the following language of his petition:

"That on or about the 6th day of August, 1924, plaintiff was upon the mining premises and the mining grounds of defendant and upon the order and request and at the direction of defendant and for the purpose of reporting for and engaging in labor for defendant as its servant, in cracking coal in a coal car on its premises . . . that while so on said premises at said time as aforesaid, and at defendant's invitation and request, and at said coal car and place where he expected and was expected to work, and that while on said premises and standing by or on said coal car."

Defendant says that there is no evidence whatever that plaintiff was invited to the place where he was injured, or that anyone directed him to go to the coal car. We think, however, that defendant makes too narrow a construction of the petition. It does not allege an invitation to a particular spot (the coal car), but on the contrary, it alleges a general invitation to the "mining premises and mining

grounds of defendant.'' The part of the petition above quoted, which defendant construes as an allegation of a specific invitation to the coal car merely states the purpose of inviting plaintiff to the premises and not that he was invited to that exact place or spot.

Therefore, the only question to be determined on the demurrer is whether or not plaintiff, in going to the coal car, went beyond and outside of the bounds of his invitation. It is well settled that an invitation to a person to visit a particular portion of the premises or to the premises generally for a particular purpose ''does not give him the right to roam at will, without further invitation, to out of the way places on the premises, wholly disconnected from and in no way pertaining to, the business in hand.'' [Glaser v. Rothschild, 221 Mo. 180, 120 S. W. 1; 22 L. R. A. (N. S.) 1045, 17 Ann. Cas. 576; Menteer v. Scalzo Fruit Co., 240 Mo. 177, 144 S. W. 833; Kennedy v. Phillips, 319 Mo. 573, 5 S. W. (2d) 33.] Defendant's theory is that the invitation, on plaintiff's testimony, could only be construed to be to the part of the premises in front of the mine shaft entrance, on the west side of the shaft tower, because the invitation was to see Schooler, the mine foreman, and that was where defendant claims he would emerge. Defendant contends that plaintiff learned that Schooler was in the mine; that he should have stationed himself at the point where Schooler would emerge from the mine; that instead he went, on the opposite side of the shaft tower, to a part of the premises to which the invitation did not extend; and that he, therefore, then became a mere licensee, for whose injuries defendant was not liable.

We do not think that under the evidence in this case, and under the rules laid down by this Court en Banc in Glaser v. Rothschild, supra, in which the authorities in this and other states were carefully reviewed, that it can be held, as a matter of law, that plaintiff went beyond the bounds of his invitation. Plaintiff said he had never been to the mine before and ''didn't know which way he (Schooler) would come out;'' that he ''had never seen anybody go in and out there;'' and that he ''didn't know whether they would come out of the chute or not.'' The side of the mine, where defendant says plaintiff should have waited, had a large sign on it saying, ''Danger, Keep Away From Here.'' On that side also was the engine house, from which the machinery was operated. We think that the jury would be justified in believing that side of the mine would seem the most dangerous to a stranger. From plaintiff's evidence, it would appear that he went to a place which had the appearance of an office and told the man who was there his business. This man told him Schooler was in the mine and said ''you go down and he will be out in a little bit.'' He did not tell plaintiff where to go but did tell him that he would break coal in the car with Adams. We think the

jury would be justified in believing, under these circumstances, that one would naturally and ordinarily be likely to go where plaintiff did, to the coal car, just around the corner of the building from the steps, which he came down at the weigh master's direction. This was where the weigh master told him he would work. No one claims he told plaintiff to go to the shaft entrance to wait for Schooler. What would be more natural than to think that Schooler would expect to find him at the place he would be put to work? At any rate, there was nothing so obviously dangerous about this place, where Adams was performing the simple operation of breaking big pieces of coal into little ones, which would make the action of plaintiff in going there contributory negligence as a matter of law and defendant does not so contend. There is no evidence that there were any signs of warning on that side of the shaft tower or that plaintiff saw any cars running out on the overhead track. We, therefore, hold that the question of whether plaintiff was within the bounds of his invitation, in going to this railroad coal car, was for the jury.

■ Defendant complains of plaintiff's Instruction No. 1, which told the jury that if plaintiff was invited ''to come there for the purpose of being employed by the defendant in the work of cracking coal in a coal car on said premises and if you further find that while plaintiff was so on said premises and where he was invited to be (if he was),'' their verdict should be for plaintiff. Defendant contends that this was not justified by the evidence because there was no evidence that plaintiff was invited to go to the coal car. This is, in effect, the same contention defendant made about plaintiff's petition above referred to. We do not think that this instruction, submitted the question of plaintiff being specifically invited to the coal car by requiring the jury to find the purpose of the invitation. This instruction commenced: ''The court instructs the jury that if . . . plaintiff went upon the premises of defendant's coal mine at Vibbard, Missouri, at the request and upon the invitation (if any) of defendant or its foreman.'' It was a long instruction covering the whole case and a reading of the whole instruction clearly shows that it submitted the question of whether plaintiff's invitation was to the premises generally and whether the place where he was injured was within the bounds of the invitation. Defendant's instructions also covered this issue and required the jury to find ''that plaintiff was injured at a place on said premises where defendant might reasonably expect plaintiff to go or be while plaintiff was waiting for defendant's foreman to emerge from the mine.'' We, therefore, rule against defendant on this contention.

■ Defendant also complains of plaintiff's Instruction No. 2, which states the invitation as follows: ''for the purpose of negotiating with plaintiff about employing plaintiff in said mine for defendant.''

This instruction told the jury what facts would constitute an invitation. Defendant says this language conflicts with the language used in Instruction No. 1, because Instruction No. 2 states an invitation to negotiate with Schooler for employment, while Instruction No. 1 states an express invitation for plaintiff to go to work at a certain place on defendant's premises. We think this contention is based upon the misconstruction, by defendant, of plaintiff's Instruction No. 1 and his petition, above pointed out. We hold it was not error.

■ Finally, defendant contends that plaintiff's Instruction No. 5, on credibility of witnesses, was error because it instructed the jury, among other things, "you may also take into consideration the business relation and connection, if any, of any witness to the parties to the case." Defendant contends that it was error to so instruct the jury, in this case, because it was shown that one of the witnesses was not employed by defendant, at the time of trial, and that after this was shown plaintiff's counsel said (after an objection of defendant to showing the amount of wages this witness received from defendant when an employee): "It is going to show the business relations between him and his employer, the defendant in this case." Defendant does not contend that this instruction is incorrect or that it would not ordinarily be proper. Defendant's contention is that, from the remarks of plaintiff's counsel, the jury would understand the instruction to be a comment upon the evidence of that particular witness. There were other witnesses, who were present or former employees of defendant. One of them was an officer and a stockholder. We hold there is no merit in this contention.

The judgment is affirmed. *Ferguson* and *Sturgis, CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All of the judges concur.