Dewey ANDERSON, Plaintiff-Respondent,

v.

Merlin WELTY and John Welty, co-partners
d/b/a Welty Brothers Sales Pavilion,
Defendants-Appellants.

No. 7793.

Springfield Court of Appeals.

Missouri.

March 29, 1960.

Don Russell, Nevada, Robert Stemmons, Mt. Vernon, for defendants-appellants.

Edward V. Sweeney, Monett, Everett E. Teel, Nevada, for plaintiff-respondent.

STONE, Presiding Judge.

In this jury-tried case, defendants, who operate a sale barn in Nevada, Missouri, appeal from a judgment for $5,-000 obtained by plaintiff, a farmer and stockman then fifty-five years of age, for personal injuries sustained in the sale barn on June 6, 1953. We pass defendants' initial appellate complaint, i. e., that the trial court erred in overruling the motion for a directed verdict at the close of plaintiff's evidence, because, by thereafter offering evidence, defendants waived any such error.

Snead v. Sentlinger, Mo., 327 S.W.2d 202, 203(1); Wilt v. Waterfield, Mo., 273 S.W. 2d 290, 293–294(2); Stephens v. Kansas City Gas Co., 354 Mo. 835, 191 S.W.2d 601, 607(12). But, the further complaint of error in overruling defendants' motion for a directed verdict at the close of all of the evidence requires a factual review, in which we should and do give appropriate recognition to the basic principle that, in determining whether a submissible case was made, we must consider the evidence in the light most favorable to plaintiff-respondent, must accord to him the benefit of all supporting inferences fairly and reasonably deducible from the evidence, and must disregard defendants' evidence except insofar as it may aid plaintiff's case. Daniels v. Smith, Mo., 323 S.W.2d 705, 706(2); Denney v. Spot Martin, Inc., Mo.App., 328 S.W.2d 399, 401(1); Pieper v. Lewis, Mo. App., 321 S.W.2d 4, 5(2); Songer v. Brittain, Mo.App., 272 S.W.2d 16, 20(7).

Defendants' sale barn is about one-half block long, north and south. The office and cafe are in the south end, north of them is the sale ring, and the cattle and hog pens are north of the ring. Two alleys, each some four and one-half to six feet in width, run north from the sale ring with rows of cattle and hog pens opening off each alley; and, near the north end of the barn there is an east-and-west alley not only connecting the two north-and-south alleys but also continuing in an easterly direction to the loading dock. Cattle and hogs unloaded at the dock go into the east-and-west alley and, after being driven to the west in that alley, are turned to the south into one of the two north-and-south alleys and then into a pen or pens opening off that alley. When sales are conducted, the same north-and-south alleys are used and animals are driven into and out of the sale ring through openings (at other times closed by sliding doors) at the south end of the alleys. Completely encircling the pen area is an overhead walkway, about four to five feet in width and about ten feet above the ground, with easy access to the walkway provided by three outside stairways.

June 6, 1953, the date of plaintiff's injury, was a sales day at defendants' barn. That morning plaintiff had unloaded three cows and three calves at the barn, and immediately after lunch he "went to see if they had the right cows with the right calves." Whether he could have done this from the overhead walkway was (so plaintiff said upon trial) doubtful; but, in any event, he went into the alleys for that purpose, there met the Prewitts (father and son) "looking for feeder pigs," and stopped to visit with them in a north-and-south alley at a point about fifteen to twenty feet from the north end thereof. Shortly thereafter, some six to eight cows driven by one Wilson, defendants' employee, turned from the east-and-west alley and headed south in the north-and-south alley where plaintiff and the Prewitts were standing. The cattle were "kind of running like they were scared"—"moving right along, crowding up that alley." With plaintiff facing toward the south, he did not see these cattle and did not know of their approach until the elder Prewitt (facing north) said "Look out, here comes some cattle" when they were about ten feet distant. The elder Prewitt got into an unlatched hog pen and the younger Prewitt leaped over the west fence of the alley into another pen, so neither was injured. But, as plaintiff was attempting to climb over the west fence, he was caught "astraddle" of the fence and sustained a severe injury to his left leg when the crowding cattle twisted it around a post.

Plaintiff's submitted theory was that, for years prior to the date of plaintiff's injury, patrons attending sales habitually stood and congregated in the alleys in defendants' barn; that defendants and their employees, fully cognizant of that fact, had followed the custom and practice of warning persons in the alleys before driving cattle through them, all of which was known to, and relied upon by, plaintiff; but that, on the occasion under consideration, defend-

ants were negligent in that their employees drove cattle into and through the alley, in which plaintiff and the Prewitts were standing, without any prior warning. The elder Prewitt testified that he had attended sales at defendants' barn since 1932, that patrons congregated in the alleys with "as many as seven or * * twelve in each alley," and that he "never heard any objection from anybody about being in those alleys." The younger Prewitt said that he had attended sales at defendants' barn "for a long time * * off and on all of my life," and that "it was a common practice for people to mill around in those alleys" —"they are usually crowded before the sale"—"people have always walked around in those alleys." Plaintiff's testimony was that for many years he had attended sales at defendants' barn "about every week and sometimes in between," that patrons "would stand in them alleys and look over the stock and get ahold of the bags to see if the cows was OK"—"every Saturday that I was there, they were in those alleys"— "as many as twelve or fourteen in each alley I have seen," and that he had never heard any objection to such use of the alleys. Both of the Prewitts and plaintiff stated positively that no one was in front of the cattle which crowded down the alley and injured plaintiff and that there was no prior notice or warning that the cattle were coming.

Defendants' proof was to the effect that the alleys were for the movement of cattle and not for use by customers, that defendant Merlin L. Welty, the auctioneer, over the public address system frequently "warned the people to stay out of the alleys," that both defendants "quite often" instructed their employees in the sale barn to keep the alleys clear, and that such employees (as one of them put it) "try to keep (people) out as much as we can." But, defendants' evidence clearly confirmed plaintiff's contention that, regardless of the availability of the overhead walkway and the efforts made to keep patrons out of the alleys, they frequently went into the alleys, used them for closer inspection of cattle and hogs, and stood in them during sales. In fact, one of defendants' employees readily admitted that "lots of times" defendants "would have to stop the sale until the people got out of the alleys." The unmistakable import of defendants' evidence was that they had actual knowledge of their patrons' use of the alleys. And, when plaintiff's counsel insisted that "it was the custom and regular practice of your men any time they were going to herd cattle down the alley to give warning to the people in the alleys that they were coming," defendant Merlin L. Welty agreed, "Yes." To the further statement of counsel that "the people in the alleys could expect that," defendant Welty responded, "Yeah, I guess that's so"; and finally when asked whether, "if on this occasion (when plaintiff was injured) * these cattle were herded down through there without any warning, that would be a violation of your custom and regular practice," the same defendant answered, "I think that would be so." Thus conceding their custom and practice to warn before driving cattle through the alleys, defendants vigorously contested the factual issue as to whether any warning was given on the occasion under consideration.

Defendants' version was that employee Dean preceded the cattle down the north-and-south alley, that plaintiff was sitting on the west fence of the alley with "his feet locked around the board fence" and his legs "sticking out in the alley," that Dean told plaintiff and the elder Prewitt (standing in the alley) "to clear the alley because there was some cattle coming down through there," but that plaintiff simply said "that he would take care of himself" and did nothing, although Prewitt easily avoided the cattle by entering a pen. Irreconcilably contrary and diametrically opposed was plaintiff's evidence that he was standing in the alley, that no one preceded the cattle, and that he had no warning of their approach until the elder Prewitt called "Look out" at which time

the cattle were so close that plaintiff was unable to escape. Since the jurors, in the exercise of their prerogative so to do, accepted plaintiff's story, we have no right to do otherwise on appeal. Colley v. Cox, Mo.App., 266 S.W.2d 778, 787(21); Denney v. Spot Martin, Inc., supra, 328 S.W.2d loc. cit. 406(11); Gould v. M. F. A. Mutual Ins. Co., Mo.App., 331 S.W.2d 663, 670–671.

■ Defendants' argument that plaintiff did not make a submissible case runs along the line that plaintiff was not "a business invitee" but was "a bare licensee" in the alley, that "the alleged *dangerous condition thereof* was open, obvious and apparent to him," and that, therefore, defendants had no legal responsibility for plaintiff's injury, because the basis of liability (even to an invitee) is the landowner's superior knowledge of an unreasonable risk of harm of which the invitee, in the exercise of ordinary care, is not or should not be cognizant, and so, when the invitee has actual or constructive knowledge of the *condition* claimed to constitute an unreasonable risk, the landowner has no duty to warn thereof. Harbourn v. Katz Drug Co., Mo., 318 S.W.2d 226, 229(2, 3); Summa v. Morgan Real Estate Co., 350 Mo. 205, 165 S.W.2d 390, 393(1, 2). Attending first to defendants' contention that, by going into the alley, plaintiff "lost his identity as a business invitee and became a bare licensee," we agree that an invitation "does not give * the right to roam at will, without further invitation, to out of the way places on the premises, wholly disconnected from, and in no way pertaining to, the business in hand" [Glaser v. Rothschild, 221 Mo. 180, 187, 120 S.W. 1, 3(4), 22 L.R.A.,N.S., 1045; Watson v. St. Joseph Coal Mining Co., 331 Mo. 475, 479, 53 S.W.2d 895, 897(3)], and that, when an invitee clearly steps beyond the bounds of his invitation, he becomes no more than a licensee. Menteer v. V. Scalzo Fruit Co., 240 Mo. 177, 183, 144 S.W. 833, 835; Gayer v. J. C. Penney Co., Mo.App., 326 S.W.2d 413, 417(4); Shuck v. Security Realty Co., Mo.App., 201 S.W. 559, 560. On the other hand, it has been said many times that an invitation "may arise from known customary use." [1]

■ However, it is not always essential to a proper appraisal and determination of rights and duties that a common-law label of "invitee" or "licensee" be pinned on a plaintiff, for the status of an injured party does not, in all instances, necessarily control and limit his right to recover [Wolfson v. Chelist, Mo., 284 S.W.2d 447, 451 (5); Boyer v. Guidicy Marble, Terrazzo & Tile Co., Mo., 246 S.W.2d 742, 748; Ahnefeld v. Wabash R. Co., 212 Mo. 280, 300, 111 S.W. 95, 99; Squires v. McLaughlin, 44 Wash.2d 43, 265 P.2d 265, 269]; and, in the circumstances of the instant record, we are moved to exclaim, "What's in a name?" [Romeo and Juliet, Act II, Sc. 2], and to confess that

" * in these nice sharp quillets of the law

Good faith, I am no wiser than a daw."

King Henry VI, Part I, Act II, Sc. 4.

In short, we eschew the unrewarding and unnecessary task of undertaking to determine whether or when instant plaintiff lost his status as an invitee and, for the purposes of further discussion, simply assume (without so deciding) that he was a licensee at the time of his injury.

■ But, it does not follow that instant plaintiff may not recover. For, " 'it is now generally held that in cases involving injury resulting from *active conduct*, as dis-

---

1. Glaser v. Rothschild, 221 Mo. 180, 186, 120 S.W. 1, 3, 22 L.R.A.,N.S., 1045; Kennedy v. Phillips, 319 Mo. 573, 585, 5 S.W.2d 33, 37; Brody v. Cudahy Packing Co, 233 Mo.App. 973, 984, 127 S.W. 2d 7, 12; Evans v. Sears, Roebuck & Co., Mo.App., 104 S.W.2d 1035, 1039; Kemp v. Doe Run Lead Co., Mo.App., 57 S.W. 2d 758, 761. See also Gilliland v. Bondurant, 332 Mo. 881, 901, 59 S.W.2d 679, 688–689(15).

tinguished from conditions of the premises, the landowner or possessor may be liable for failure to exercise ordinary care towards a licensee whose presence on the land is known or should reasonably be known to the owner or possessor.'" Harper and James, The Law of Torts, Vol. 2, § 27.10, loc. cit. 1476. See also Prosser, Law of Torts (2nd Ed.), § 77, loc. cit. 448; 38 Am.Jur., Negligence, § 104, loc. cit. 766–767. Numerous Missouri cases have recognized this general rule. As our Supreme Court put it in Menteer v. V. Scalzo Fruit Co., supra, 240 Mo. loc. cit. 184, 144 S.W. loc. cit. 835, a licensee "may complain of wanton or intentional injury *or active negligence,* it is said, but not that the place into which he goes for his own purposes and without invitation was not made safe in anticipation of his unexpected and undesired presence"; or, as succinctly stated in Twine v. Norris Grain Co., 241 Mo.App. 7, 19, 226 S.W.2d 415, 422(7), "It is true, of course, that a land occupier is subject to liability for bodily harm caused to a licensee by the *active or affirmative negligence* of the occupier." (This and all subsequent emphasis is ours.) So, the familiar statement that a bare licensee takes the premises as he finds them usually has been limited by the equally-familiar exception of ."wantonness, or

some form of intentional wrong or *active negligence by the owner or occupier.*" [2]

As these terms may be used in cases involving the liability of a possessor of premises to one injured thereon, "active or affirmative negligence" may be defined broadly as negligence occurring in connection with activities conducted on the premises, and "passive negligence" as negligence which causes danger by reason of the physical condition of the premises.[3] In the instant case, plaintiff was not endangered by the physical condition of the premises but he was injured only because defendants' employee drove cattle into the alley (as plaintiff said and the jury found) without prior warning. Although a failure to warn, *standing alone,* is negative in nature [Anderson v. Cinnamon, 365 Mo. 304, 282 S.W. 2d 445, 450(8), 55 A.L.R.2d 516], we have no doubt but that the negligence with which instant defendants were charged, and of which they were found guilty, i. e., their failure to warn coupled with their affirmative conduct in driving cattle into the alley when they reasonably should have anticipated or foreseen the presence of persons there, constituted active or affirmative negligence.[4]

Nevertheless, defendants earnestly insist that, in any event, their motion

**2.** Glaser v. Rothschild, supra, 221 Mo. loc. cit. 185, 120 S.W. loc. cit. 3; Kennedy v. Phillips, supra, 319 Mo. loc. cit. 584, 5 S.W.2d loc. cit. 37; Porchey v. Kelling, 353 Mo. 1034, 1040, 185 S.W.2d 820, 822 (2); Oliver v. Oakwood Country Club, Mo., 245 S.W.2d 37, 40(2); Wolfson v. Chelist, Mo., 284 S.W.2d 447, 448. To the same effect, see Anderson v. Cinnamon, 365 Mo. 304, 282 S.W.2d 445, 447 (3), 55 A.L.R.2d 516; Gilliland v. Bondurant, supra, 332 Mo. loc. cit. 897, 59 S.W.2d loc. cit. 687(14); Miller v. Cracchiola, Mo.App., 321 S.W.2d 18, 20(1).

**3.** Wolfson v. Chelist, Mo.App., 278 S.W.2d 39, 47(16); Potter Title & Trust Co. v. Young, 367 Pa. 239, 80 A.2d 76, 78(2, 3); Komlo v. Balazick, 169 Pa.Super. 296, 82 A.2d 706, 709(12, 13); Warner v. Lieberman, D.C.Wis., 154 F.Supp. 362, 368, affirmed 7 Cir., 253 F.2d 99, certiorari denied 357 U.S. 920, 78 S.Ct. 1361,

2 L.Ed.2d 1364. See also Kuzmiak v. Brookchester, Inc., 33 N.J.Super. 575, 111 A.2d 425, 431(12); Simpson v. Richmond, 154 Cal.App.2d 27, 315 P.2d 435, 437(2).

**4.** Potter Title & Trust Co. v. Young, supra, 80 A.2d loc. cit. 79; Colgrove v. Lompoc Model T. Club, 51 Cal.App.2d 18, 124 P.2d 128; Burke v. John E. Marshall, Inc., 42 Cal.App.2d 195, 108 P.2d 738, 742(6); Yamauchi v. O'Neill, 38 Cal.App.2d 703, 102 P.2d 365, 367(3); Roadman v. C. E. Johnson Motor Sales, 210 Minn. 59, 297 N.W. 166; Babcock & Wilcox Co. v. Nolton, 58 Nev. 133, 71 P.2d 1051, 1054(8, 9); Valdale Apartments v. Ercito Mazzella Const., Inc., Sup., 115 N.Y.S.2d 59, 61; Garstka v. Republic Steel Corp., 294 Mich. 387, 293 N.W. 691; Brigman v. Fiske-Carter Const. Co., 192 N.C. 791, 136 S.E. 125, 128, 49 A.L.R. 773.

for a directed verdict should have been sustained because plaintiff was contributorily negligent as a matter of law. But, their argument on this point ignores the substantial evidence heretofore reviewed from which the jury reasonably could have found that defendants were cognizant of the habitual use of the alleys by patrons; that, as plaintiff knew, defendants customarily warned persons in the alleys before driving cattle through them; but that, on the occasion under consideration, no warning was given. Our appellate courts repeatedly have said that one is not required to look for danger when he has no cause to anticipate it, or when danger would not exist but for the negligence of another,[5] and just as frequently have pointed out that the issue of contributory negligence is always for the jury unless, from the whole evidence and all inferences fairly deducible therefrom, when viewed in the light most favorable to plaintiff, the only reasonable conclusion is that he was guilty of negligence proximately causing his injury.[6] Guided by these principles, we may not say that instant plaintiff was guilty of contributory negligence as a matter of law, and our considered opinion is that he made a submissible case for the jury. See particularly Crawford v. Kansas City Stockyards Co., 215 Mo. 394, 114 S.W. 1057, and Willig v. Chicago, B. & Q. R. Co., 345 Mo. 705, 137 S.W.2d 430.

Defendants' next point is that the trial court erred in admitting *over objection* certain evidence as to the custom of patrons to congregate in the alleys of defendants' barn. However, the transcript reveals that substantial evidence of this custom came into the record from the elder Prewitt, plaintiff's *first* witness, *without any objection or motion to strike*. Obviously, the admissibility of that evidence is not for appellate review. Faught v. Washam, Mo., 329 S.W.2d 588, 599(17), and cases cited in footnote 16. The only objection to similar testimony by the younger Prewitt, plaintiff's second witness, came *after the witness had answered* and was confined to the naked complaint that "we object to that and ask that it be stricken," which constituted no objection and preserved nothing for appellate review.[7] Plaintiff, the third witness on this subject, already had testified to the pertinent facts in answering a previous question without objection or motion to strike and then had completed his affirmative answer to the further inquiry whether is was "a regular custom for people to be in those alleys," before defendants' counsel said "we object to that because it calls for a legal conclusion and we move that it be stricken." With no suggestion in the record that counsel did not have ample time and opportunity to object before the answer was given [Borgman v. Boten, Mo.App., 225 S.W.2d 360, 362], the objection and

5. Crawford v. Kansas City Stockyards Co., 215 Mo. 394, 114 S.W. 1057, 1063(13); State ex rel. Elliott's Dept. Store Co. v. Haid, 330 Mo. 959, 965–966, 51 S.W. 2d 1015, 1017; Cento v. Security Bldg. Co., Mo., 99 S.W.2d 1, 7; Elgin v. Kroger Grocery & Baking Co., 357 Mo. 19, 28, 206 S.W.2d 501, 507(8); Stupp v. Fred J. Swaine Mfg. Co., Mo., 229 S.W.2d 681, 686; Williamson v. St. Louis Public Service Co., 363 Mo. 508, 252 S.W.2d 295, 299(7); Romandel v. Kansas City Public Service Co., Mo., 254 S.W.2d 585, 591(11); Tarantola v. Johnny Hemphill, Inc., Mo.App., 324 S.W.2d 379, 382(4); Louisville & Nashville R. Co. v. Beatrice Foods Co., Mo.App., 250 S.W.2d 825, 829(7).

6. Herr v. Ruprecht, Mo., 331 S.W.2d 642, 649(10); Pender v. Foeste, Mo., 329 S.W.2d 656, 659(3); Daniels v. Banning, Mo., 329 S.W.2d 647, 652(5); Moore v. Ready Mixed Concrete Co., Mo., 329 S.W.2d 14, 19(1); Kickham v. Carter, Mo., 314 S.W.2d 902, 908(8); Wilson v. White, Mo.App., 272 S.W.2d 1, 7(15).

7. Gaty v. United Rys. Co., Mo. (banc), 251 S.W. 61, 64(1); Fox v. Connecticut Fire Ins. Co. of Hartford, Mo.App., 268 S.W. 393, 395(6); Taylor v. Kelder, 229 Mo.App. 1117, 1131, 88 S.W.2d 436, 444(9). See also Faught v. Washam, Mo., 329 S.W.2d 588, 599(16); Hoffman v. St. Louis Public Service Co., Mo., 255 S.W. 2d 736, 742(7).

motion to strike after answer came too late.[8] Furthermore, the reports are sprinkled generously with holdings that a party will not be heard to complain of the admission of testimony over his objection, where testimony of the same tenor theretofore had been admitted without objection.[9]

■ Defendants also complain that the trial court erred in giving plaintiff's verdict-directing instruction 1 "for the reason that said instruction is based upon illegally admitted evidence and does not properly hypothecate (sic) the facts"; but, as plaintiff's counsel point out, the quoted assignment is so general that it preserves and presents nothing for our review.[10]

■ Finally, defendants assign error in refusal of instruction A by which they sought to submit their affirmative defense of plaintiff's contributory negligence, and instruction B by which they sought to submit plaintiff's negligence as the sole cause of his injury. It may not be inappropriate

for us to reiterate and emphasize that, in the even-handed administration of justice, a defendant is entitled to have his defenses, within the pleadings and the evidence, clearly submitted by proper instructions; or, as the same thought is otherwise expressed, a defendant has the right to an affirmative submission of his own theory of the facts shown in evidence which, if found, would preclude recovery by plaintiff and absolve defendant from liability.[11] Since this is true with respect to the defense of contributory negligence where, as here, submission of that defense would have been justified under the pleadings and under the evidence,[12] and since instant defendants were put to the jury with no instructions other than on the burden of proof and on the definition of "ordinary care," we have carefully considered this assignment of error on its merits, notwithstanding the fact that neither of the refused instructions has been set forth in defendants'-appellants' brief as is plainly required by Supreme Court Rule 1.08 [cf. Brown v. Thomas, Mo.

8. Doherty v. St. Louis Butter Co., 339 Mo. 996, 1008, 98 S.W.2d 742, 747(8, 9); Lesch v. Terminal R.R. Ass'n of St. Louis, Mo., 258 S.W.2d 686, 691–692 (13); Teters v. Kansas City Public Service Co., Mo., 300 S.W.2d 511, 515 (3); Durbin v. Cassalo, Mo.App., 321 S.W.2d 23, 26(4, 5).

9. Keyes v. Chicago, B. & Q. R. Co., 326 Mo. 236, 263, 31 S.W.2d 50, 62(9); Gaty v. United Rys. Co., supra, 251 S.W. loc. cit. 64(2); Laughlin v. Kansas City Southern Ry. Co., 275 Mo. 459, 474, 205 S.W. 3, 8(13); Kelly v. Rieth, Mo.App., 168 S.W.2d 115, 118(1); Carroll v. Missouri Power & Light Co., 231 Mo.App. 265, 273, 96 S.W.2d 1074, 1079(12); Rose v. National Lead Co., Mo.App., 94 S.W.2d 1047, 1050(4); DeMoss v. Baudo, Mo.App., 79 S.W.2d 766, 771(6).

10. Supreme Court Rule 1.08, 42 V.A.M.S.; Catanzaro v. Duzer, Mo.App., 329 S.W. 2d 257, 261(7); Sides v. Contemporary Homes, Inc., Mo.App., 311 S.W.2d 117, 121–122(10); Lewis v. Watkins, Mo. App., 297 S.W.2d 595, 597; Smyth v. City of St. Joseph, Mo.App., 297 S.W.2d 578, 582(6); Gelhot v. City of Excelsior Springs, Mo.App., 277 S.W.2d 650, 657 (8). See also Haley v. Edwards, Mo., 276 S.W.2d 153, 162(15); Weekley v.

Wallace, Mo.App., 314 S.W.2d 256, 258 (6); Kennedy v. Hartwig-Dischinger Realty Co., Mo.App., 201 S.W.2d 475, 480(11).

11. Wilson v. Miss Hulling's Cafeterias, Inc., 360 Mo. 559, 229 S.W.2d 556, 560 (6); Martin v. Effrein, 359 Mo. 1150, 225 S.W.2d 775, 777–778(1); Johnson v. Hurck Delivery Service, 353 Mo. 1207, 187 S.W.2d 200, 202(2); Kimbrough v. Chervitz, 353 Mo. 1154, 186 S.W.2d 461, 466(10); Bashkow v. McBride, Mo.App., 177 S.W.2d 637, 639(4); Broderick v. Brennan, Mo.App., 170 S.W.2d 686, 688 (2, 3). See also Baccalo v. Nicolosi, Mo., 332 S.W.2d 854; Martin v. Mercantile Trust Co., Mo., 293 S.W.2d 319, 328(10); Alwood v. St. Louis Public Service Co., Mo.App., 238 S.W.2d 868, 872(5).

12. Montgomery v. Ross, Mo., 218 S.W.2d 99, 102–103(3, 5); Wilson v. Thompson, 345 Mo. 319, 133 S.W.2d 331, 334(8); Orloff v. Fondaw, Mo.App., 315 S.W.2d 430, 434(7); Spain v. St. Louis & S. F. R. Co., Mo.App., 190 S.W. 358, 360(4); Derrington v. City of Poplar Bluff, Mo. App., 186 S.W. 561, 563–564(5); Stephens v. City of El Dorado Springs, 185 Mo.App. 464, 171 S.W. 657, 660(6).

App., 316 S.W.2d 234, 237(9)] and the further fact that, in support of this assignment, defendants' counsel have cited no case law, have contented themselves with one reference to a text, and have made no reply to the scholarly treatment of this point in plaintiff's-respondent's brief.

But, where defendants have the right to a submission of their theory of the case, the duty rests upon their counsel, not upon the court, to formulate an instruction, substantially correct in form and in substance, on that theory;[13] and the court is under no *duty* to correct or modify an offered instruction [14] and, if such instruction is incorrect, may not be convicted of reversible error for refusing it even though giving it might not have worked a reversal.[15] Without further extending this already long opinion by quoting instructions A and B, it will suffice to say that plaintiff's counsel insist that these instructions erroneously *assumed* that plaintiff was negligent in certain respects without requiring the jury so to find [Mahaney v. Clay County & St. Joseph A. T. Co., 329 Mo. 793, 46 S.W.2d 817, 821(7); Piehler v. Kansas City Public Service Co., 360 Mo. 12, 18, 226 S.W.2d 681, 684; Payne v. Stott, Mo.App., 181 S.W.2d 161, 164(11)]; and, on the authority of the cited cases, we are constrained to agree with counsel. Certainly, instructions A and B were not drawn in language "so plain that no doubt can arise as to (their) meaning" [Schipper v. Brashear Truck Co., Mo., 132 S.W.2d 993, 996(9), 125 A.L.R. 674; Piehler v. Kansas City Public Service Co., supra, 226 S.W.2d loc. cit. 684(5)]; and, in these circumstances, we may not find reversible error in their refusal.

The judgment for plaintiff is affirmed.

McDOWELL and RUARK, JJ., concur.

13. McCarthy v. Sheridan, 336 Mo. 1201, 1208, 83 S.W.2d 907, 910; Douglas v. Whitledge, Mo.App., 302 S.W.2d 294, 303(5); Jenkins v. Clopton, 141 Mo.App. 74, 121 S.W. 759, 766(8).

14. Hertz v. McDowell, 358 Mo. 383, 214 S.W.2d 546, 550(7, 8); Schipper v. Brashear Truck Co., Mo., 132 S.W.2d 993, 996(8), 125 A.L.R. 674; Huhn v. Ruprecht, Mo., 2 S.W.2d 760, 763(5);

D'Arcy v. Catherine Lead Co., 155 Mo. App. 266, 133 S.W. 1191, 1193(4).

15. Pennington v. Carper, Mo., 309 S.W.2d 596, 601; McCarthy v. Sheridan, supra, 83 S.W.2d loc. cit. 911(5); Orloff v. Fondaw, supra, 315 S.W.2d loc. cit. 433 (2); Britain v. Davis, Mo.App., 198 S.W.2d 354, 357. See also Hogan v. Kansas City Public Service Co., 322 Mo. 1103, 19 S.W.2d 707, 711(6), 65 A.L.R. 129.