**William C. SEIFERTH and William H. Seiferth, a minor, by William C. Seiferth, his father and next friend, Plaintiffs-Appellees,**

v.

**ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, a Missouri corporation, Defendant-Appellant.**

**No. 15529.**

United States Court of Appeals Seventh Circuit.

Oct. 11, 1966.

Rehearing Denied Nov. 18, 1966.

David B. Stutsman, Walker & Williams, East St. Louis, Ill., for defendant-appellant.

Francis D. Conner, East St. Louis, Ill., William J. O'Brien, Chicago, Ill., Wagner, Conner, Ferguson, Bertrand & Baker, East St. Louis, Ill., William M. Flaherty, Chicago, Ill., for William C. Seiferth and William H. Seiferth, plaintiffs-appellees.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

This diversity action was brought by William H. Seiferth, a minor, and William C. Seiferth, his father and next friend, citizens of Illinois, against the St. Louis Southwestern Railway Company, a Missouri corporation with its principal place of business in Texas, for personal injuries sustained by the minor plaintiff while riding in an empty boxcar of one of the defendant's freight trains. The defendant appeals from a judgment entered upon a jury verdict for the plaintiffs.[1] The principal question concerns the duty owed by the defendant railroad to the minor plaintiff (subsequently referred to as the plaintiff) at the time of his injury.

On the morning of July 6, 1963, the plaintiff, a sixteen year old boy of average mental and physical ability, left his home in Hinsdale, Illinois, determined to seek summer employment elsewhere. He was accompanied by James Mackey, a youth of fifteen. The plaintiff and his companion hitchhiked to East St. Louis, Illinois, where Mackey persuaded the plaintiff that a journey to Texas might be rewarded by work on a ranch. With such a trip in mind, the boys made their way to the defendant's East St. Louis freight yard in an effort to secure free transportation. They arrived at the freight yard about 9:30 a. m. on July 7, and remained there until they finally departed on a freight train about 4 p. m. on the same day.

While in the freight yard, the boys talked to a number of railroad employees, several of whom promised to assist them in obtaining a free ride. One of these employees, a yard clerk who was making up a freight train, told the boys that the "Advance Blue Streak Merchandise," destined for Pine Bluff, Arkansas, would be leaving at 4 p. m. and would have empty box cars in which they could ride. The engineer of this train was in the yard while it was being made up. He met the boys and told them that he would be the engineer for the first 125 miles. The boys also discussed their proposed ride and train departure schedules with other yard employees. When the plaintiff mistakenly entered a boxcar of an inbound train, a brakeman told him that he was in the wrong car.

Shortly before the train was ready to depart, the engineer and the yard clerk pointed out where the empty boxcars were located, and the boys climbed aboard one of them. The car had long steel straps attached to the walls and loose lumber strewn about on the floor. The boys cleared the lumber from one end of the car and sat down. The rear brakeman looked in on them before the train departed and inquired as to their destination. He also requested that they "keep a lookout for anything wrong" and told them that if they saw anything, they should report it to him in the caboose.

The conduct of the defendant's employees in permitting the boys to roam at will through the freight yard and in assisting them in securing a free ride on a freight train was expressly forbidden by the rules of the railroad. Defendant's

---

1. The jury awarded damages of $48,000 to the minor plaintiff and $7,000 to his father.

Rule 505 states in part that "unless freight trains are regularly designated to carry passengers, no person must be permitted to ride thereon, except by proper authority." [2] The evidence as to the extent and frequency of the violation of Rule 505 by railroad employees was inconclusive. No consistent pattern of employee dereliction in this respect was established. In the situation of the plaintiff and his companion the violation was flagrant. In addition, there were some vague references to the intermittent presence of "bad characters" and transients on the defendant's freight trains over a period of years.

The plaintiff and his companion rode in the boxcar from East St. Louis to Illmo, Missouri, a distance of 125 miles. The day was hot, and the only ventilation was provided near the doors of the car, which were open a few feet. The steel straps attached to the walls swayed back and forth. In order to avoid the straps, the boys either had to stay in the back of the car or go to the doorway. During the first part of the trip the plaintiff remained in the rear of the car while his companion sat in the open doorway with his legs extending out of the car. The train stopped at Illmo, where a complete crew change took place. As the train came into the railroad yard one of the boys was sitting in each doorway. Two railroad employees required to inspect the train at Illmo either failed to see them, or having seen them, failed to remove them from the train.

The train left Illmo at about dusk, picking up speed until it was traveling a few miles in excess of sixty-five miles per hour, the speed restriction imposed by the railroad. The speed of the train caused the boxcar in which the plaintiff was riding to experience slightly more side-sway and jerking than had been encountered up to that point. The plaintiff rode in the open doorway of the boxcar with his legs hanging over the side. About 100 miles from Illmo the train approached a steel bridge across the Caspar River, known as the Avert Crossing. There was a gradual curve to the left just north of the bridge and a gradual curve to the right just south of it. As the train went through these curves there was a sudden "run in" of slack. The plaintiff's legs flew out from the side of the boxcar, hit the side of the bridge, and he was pulled from the car, causing severe and permanent injuries.

Thus the essential facts in this case were that the plaintiff was a youth of sixteen who desired a free ride on a freight train, that he was permitted, even encouraged, to ride in an empty boxcar by the employees of the railroad, and that in so permitting the plaintiff to ride, the employees were acting in violation of railroad rules.

The threshold question raised by these facts is whether the railroad owed the plaintiff the duty to exercise due care for his safety or whether it owed the less exacting general duty of a property owner to a trespasser. By the authority of several Missouri [3] cases of continuing vitality presenting similar factual situations, the railroad owed the plaintiff only the duty to refrain from intentional, wanton, or reckless injury, and, since the record contains no evidence of any such conduct by the railroad, it was entitled to a directed verdict.

In his complaint and at the trial, the plaintiff attempted to make the cus-

2. The plaintiff infers that this rule was understood by some employees to prohibit them only from permitting persons to ride on the engine or caboose of freight trains. The testimony of the railroad employees referred to by the plaintiff, however, fails to support this position. Perhaps most illustrative of this testimony is that of one of the defendant's conductors, who said: "Anybody that rides a train has to have written authority. We don't let them ride in the engine or the caboose and they are not supposed to ride any place, but we don't have any means of protecting ourselves in trying to put them off, so I don't put them off, but they're not supposed to ride the train."

3. Since the last act necessary to create liability on the part of the railroad occurred in Missouri, the substantive law of that state governs this case.

tomary rules of ordinary negligence applicable by advancing two distinguishable theories of recovery. He first maintained that under an expanded interpretation of the "attractive nuisance" doctrine, the defendant was liable for any foreseeable injury to the plaintiff resulting from the danger inherent in the operation of the defendant's trains. The plaintiff also proceeded on the theory that he somehow became a "business invitee" or "passenger" on the freight train by the action of the defendant's employees, thus imposing a strict duty of care upon the railroad. The evidence, however, fails to justify the submission of the case to the jury on either theory.

■ None of the criteria for the application of the "attractive nuisance" doctrine, an exception to the general rule of nonliability of a property owner for negligent injury to a trespasser, is present. See, e. g., Holifield v. Wigdor, 361 Mo. 636, 235 S.W.2d 564 (1951); Hull v. Gillioz, 344 Mo. 1227, 130 S.W.2d 623 (1939); Buddy v. Union Terminal Ry., 276 Mo. 276, 207 S.W. 821 (1918). Nor do the facts lend themselves to analysis calling for an application of the principles underlying this, or related, doctrines. See, e. g., Kahn v. James Burton Co., 5 Ill.2d 614, 126 N.E.2d 836 (1955).

■ Further, there can be no question that persons who ride on freight trains do not ordinarily enjoy the status of "passengers," whatever special connotations such a designation may impart. Freight trains are simply not designed to carry passengers. As to persons who secure such free transportation, a railroad generally owes no duty to exercise reasonable care for their safety, that is, it is not liable for injury to them resulting from the negligent operation of its freight trains. A railroad's duty is merely to refrain from intentional or reckless injury to such persons and to exercise reasonable care to avoid injuring them after they have been discovered in a posi-

tion of imminent danger.[4] McClanahan v. St. Louis Public Service Co., 363 Mo. 500, 251 S.W.2d 704 (1952); Giles v. Missouri Pac. Ry., 169 Mo.App. 24, 154 S.W. 852 (1913).

The question which remains is whether the railroad's duty is affected when an unauthorized invitation to ride is extended by railroad employees. The Missouri courts have faced this question and we are bound by their resolution of it.

In Stringer v. Missouri Pac. Ry., 96 Mo. 299, 9 S.W. 905 (1888), an eighteen year old youth climbed on the front of a switch engine at the invitation of a railroad employee and was subsequently injured by the negligent operation of the engine by another employee. The Missouri Supreme Court reversed a judgment entered on a verdict for the plaintiff. It stated:

The evidence * * * entirely fails to show that the engine on the front part of which plaintiff rode was engaged in carrying passengers; but, on the contrary, it shows that it was not so engaged, it being a switch-engine, engaged in switching cars in defendant's yard. Nor does the evidence show, or tend to show, that the brakeman who said to plaintiff, "If you are going to get on, get on," was acting either within the scope of his employment or was in any way authorized to invite or receive plaintiff as a passenger, or otherwise, on said engine. On this state of facts, under the ruling made in the case of Snyder v. Railway Co., 60 Mo. 419, the court erred in overruling defendant's demurrer to the evidence. It is there said: "It is patent that the acts of defendant's servants * * * in inducing, encouraging, and permitting the plaintiff's son and others to ride upon the cars operated by them cannot be viewed as having been done by them in the course of their employment. It does not appear that they were engaged in carrying passengers, or had any authority to

4. Mere knowledge of the presence of young hitchhikers in a boxcar is not, of course, a discovery in a position of imminent peril. Cf., McClanahan v. St. Louis Public Service Co., 363 Mo. 500, 251 S.W.2d 704 (1952).

permit persons to ride on said cars, with or without compensation, or that the invitation or permission alleged were in furtherance of the master's interest, or indirectly connected with the service which they had engaged to render to it. * * * " 9 S.W. at 906.

Railroad section hands permitted a boy of nine to ride on a hand car in Chrisco v. St. Louis & S.F. R.R., 163 Mo.App. 540, 146 S.W. 1180 (1912). The complaint alleged negligence on the part of the railroad in permitting its employees, over a long period of time, to invite children to ride the car, despite the protestations of their parents, and, on the occasion in question, in encouraging the plaintiff's son to jump from the car while it was in motion. The boy was injured in so doing. The court affirmed a judgment sustaining a demurrer to the complaint, stating:

> The acts of servants in permitting children to ride on hand cars and other similar vehicles have been the basis of many suits for damages; but the courts have, with marked unanimity, denied a recovery, where the servant was acting outside the scope of his employment. * * *
>
> While plaintiff's son was, perhaps, seriously injured, and while mankind usually feel more indignation at wrong done to children than to others, yet such things alone must not govern or control the decisions of the courts; but liability must be determined by the rules of law. 146 S.W. at 1181.

Finally, in Giles v. Missouri Pac. Ry., 169 Mo.App. 24, 154 S.W. 852 (1913), a young man of nineteen was killed when he was thrown from the top of a freight car which he had mounted while it was in motion with the knowledge of several railroad employees. The evidence of prior acquiescence in similar conduct by the plaintiff on the part of railroad personnel was depicted by the court as follows:

> For two years or more he had frequented the railroad yards, had been on friendly terms with the trainmen engaged in the freight service, had been suffered to climb on and off moving trains and cars, and, at times, to perform duties of a brakeman. This practice had been a constant source of worry to his parents. Repeatedly they had requested the trainmen, the station agent, and on one occasion the division superintendent, to prevent their son from gratifying his propensity. The town marshal, at their request, had sought to stop the practice by threatening to arrest the boy. Witnesses for the plaintiff say the trainmen turned a deaf ear to their importunities and encouraged the practice. 154 S.W. at 853.

Nevertheless the court proceeded to assess the duty which the railroad owed to the youth under the circumstances. After noting that the youth had violated a Missouri statute in climbing aboard a moving train,[5] the court stated:

> It was not the duty of defendant to fence its yards or to exclude trespassers from its premises and prevent them from violating the law by climbing on its moving trains. * * * Nor did its train crews, including the conductor, have any authority, express or implied, to invite young Giles to transgress the law. * * * Giles was not the licensee of defendant for the reason that none of defendant's officers and agents had authority to license lawbreaking, and, if this is true, then no license could be implied from long-continued sufferance by defendant of such trespassing. Giles was a trespasser on the train, and the only duty defendant owed him was that of not wantonly or willfully injuring him. * * *
>
> No inference that the injury was wantonly or willfully inflicted can arise from the mere fact that it resulted from one of the usual risks incident to the position voluntarily taken by the young man. 154 S.W. at 856–857.

---

5. It would appear that the plaintiff in this case was similarly prohibited from riding in the freight train. Mo.Stat.Ann. § 564.-350.

The principles announced in the foregoing decisions have been neither overruled nor questioned by subsequent Missouri cases. Therefore we hold that the defendant was entitled to a directed verdict.

The judgment of the district court is reversed.

SCHNACKENBERG, Circuit Judge (dissenting).

Guided by the most recent applicable decisions of the Missouri courts,[1] which have been ignored by the majority opinion, I find it necessary to dissent. I feel it is not proper for us to ignore these recent decisions and thereby reverse the judgment of the trial court herein, based upon the verdict of a jury. To bypass these late decisions and rely on earlier cases [2] said to be favorable to defendant, is not the proper way to ascertain the *present* applicable Missouri law.

There was evidence tending to prove the following facts:

Plaintiff was 16 years old and of average mental and physical ability on July 6, 1963, when he and James Mackey, 15 years old, hitchhiked from Hinsdale, Illinois to St. Louis, Missouri, and arrived near the St. Louis bus depot that evening. They walked across a bridge to the Illinois side of the Mississippi river and spent the night in an empty boxcar in the railroad yard near the river. They had decided to catch a Cotton Belt freight train to Texas. In the morning they walked toward the Cotton Belt yard, which they entered uninvited, for the purpose of boarding a freight. The yard was unfenced. They then talked to an employee named Rainey, who was dressed in a straw hat, Bermuda shorts and a T-shirt and was telling the other men to throw switches.

When plaintiff asked Rainey about a train ride, the reply was that there would probably be one leaving at 3:30, but he was not sure if they could ride on it, because he was not sure there would be any empties. He told the boys to wait and see, which they did for about two hours. A man who said he was engineer Dopp on the train under consideration, told them that he was the engineer for the first 125 miles and that the train was going to Texas and the coast. Rainey told the boys that the train "was a fast freight and it needed 65 cars on it and it was some short and that he would put some on". Rainey also told them that "he could only send the 'mix' to Pine Bluff and that we could get another ride at Pine Bluff." Rainey showed the boys the track and the string of cars then standing there and told them to go down and pick a car.

Plaintiff had mistakenly gotten in an empty boxcar of an inbound train. This they learned when they told a switchman Lawrence, who was uncoupling cars on that train, that they were in search of a ride to Texas. Lawrence told them they were in the wrong car and that they should "see the men over by the shack".

The boys discussed their proposed ride with other employees of defendant and were given various departure times on other freight trains for the west. They openly roamed the freight yard for the greater part of the day. They rested on the ice dock, climbed over cars and across couplings and rode boxcars that were being "kicked in" along the ice dock siding. Plaintiff carried a boy scout knapsack on his back.

Shortly before the train departure, engineer Dopp and Rainey reminded the boys thereof and pointed to where the empty boxcars were located.

1. White v. Burkeybile, Mo., 386 S.W.2d 418 (1965); Anderson v. Welty, Mo.App., 334 S.W.2d 132 (1960); and Porchey v. Kelling, 353 Mo. 1034, 185 S.W.2d 820 (1945).

2. Giles v. Missouri Pac. Ry., 169 Mo.App. 24, 154 S.W. 852 (1913); Chrisco v. St. Louis & S. F. R. R., 163 Mo.App. 540, 146 S.W. 1180 (1912); and Stringer v. Missouri Pac. Ry., 96 Mo. 299, 9 S.W. 905 (1888), which cites Snyder v. Hannibal & St. Jos. R. Co., 60 Mo. 413 (1875).

The boxcar in which plaintiff and companion rode had long steel straps attached to the walls and long pieces of lumber with spikes in them, which the boys cleared away from the end of the car where they sat. While the boys were awaiting train departure, rear brakeman Trucks, who was making a walking inspection of the train, saw the boys in the car. He asked where they were going and they advised him "Texas". He said "all right". He asked them to "keep a lookout for anything wrong" and to report it to him in the rear of the train. He also called them to the attention of George Fundenberg, who inspected the train just before it left.

Several employees testified that the operating rules of the railroad prohibited them only from permitting boys to ride on the engine or caboose and that the railroad did not require them to remove or report boys riding in empty boxcars.

Thus, brakeman Trucks testified that during the 20 years prior to 1963 he had seen five or six persons riding in boxcars and he had never requested any of them to leave. He further testified that he had never had anyone instruct him to put anybody off boxcars, and he did not report them to police, detectives or any supervisory employee unless they were building a fire to keep warm in which case he did, but that the caboose and engine are different portions of the train.

Shortly after the train started, it being a very hot day with no ventilation in the car except through the open doors, the boys sat on the floor of the boxcar, the doors being open only three feet. In the meantime, a few pieces of lumber were released when the steel straps attaching them to the wall snapped.

At Illmo, Missouri, 125 miles from East St. Louis, the train stopped. Plaintiff was then on the west side of the car and Mackey, his companion, was on the east side, each sitting in an open doorway. Conductor Frazier inspected the west side of the train and rear brakeman Smith inspected the east side. These employees either failed to see the boys in the doorways or saw them and failed to remove them from the train.

There was some evidence indicating that the train was operated by engineer Walker from Illmo to Avert, Missouri, much faster than it had been operated to Illmo, where a change of engineers occurred. Between Illmo and Avert there were sudden lurches of the car as the train approached curves at a speed estimated by plaintiff to be 70 miles per hour. More significantly, the speed tape on the locomotive showed the speed was *70 miles per hour* for six minutes prior to what then occurred, *which was five miles in excess of defendant's speed restriction of 65 miles per hour*. Because of close clearance at a girder bridge at Avert, Missouri, and the high speed and lurching of the cars, plaintiff's leg came in contact with a girder of the bridge and "felt like somebody had a lariat around my leg and was pulling me out of the car", and although he tried to hold on, "with the train going so fast that it just yanked me right out" of the train, causing injuries which resulted in the amputation of his left leg.

1. The evidence shows that, in defendant's switching yard, where its freight trains were assembled and from which they departed over defendant's tracks, there existed on the occasion in question here an open and notorious practice by its employees in charge of the yard to permit the use of its freight cars for travel by nonpaying passengers. Inasmuch as there was evidence to prove that this practice was common and long-continued, the jury in this case had a right to find, as a matter of fact, that defendant knew of and condoned the practice. Having in effect so found by its verdict, I would hold that plaintiff is considered, by Missouri law,[3] to have been a permissive licensee of defendant on the trip when he was injured. Porchey v. Kelling, 353 Mo. 1034, 185 S.W.2d

---

3. This case is governed by the law of the state where the accident happened. Way-

nick v. Chicago's Last Department Store, 7 Cir., 269 F.2d 322, 325 (1959).

820 (1945). The Missouri Supreme Court, in that case, at 823, said:

" * * * A licensee enters for his own purposes and with the permission, expressed or implied, of the possessor. An entrance made by sufferance, expressed or implied, distinguishes the licensee from the trespasser; and an entrance for the entrant's own purpose distinguishes a licensee from an invitee. * * * "

and at 824, the court pointed out

" * * * A danger concealed only by the darkness of night does not make a licensor liable. * * * Liability does not attach to a possessor for injury to an *adult* licensee who falls into an excavation long maintained in the furtherance of his business, especially for passive as distinguished from *active negligence*. * * * " (Emphasis supplied.)

Thus the court decided that there could be no recovery by plaintiff in that case, undoubtedly because there was no evidence of active or affirmative negligence on the part of the owner or possessor.

On the other hand, in Anderson v. Welty, 334 S.W.2d 132 (1960), the Court of Appeals of Missouri pointed out, at 136, that

" * * * ' "it is now generally held that in cases involving injury resulting from *active conduct,* as distinguished from conditions of the premises, the landowner or possessor may be liable for failure to exercise ordinary care towards a licensee whose presence on the land is known or should reasonably be known to the owner or possessor." ' * * * "

and the court, at 137, added:

" * * * So, the familiar statement that a bare licensee takes the premises as he finds them usually has been limited by the equally-familiar exception of 'wantonness, or some form of intentional wrong or *active negligence by the owner or occupier.*' "

In the case at bar, where plaintiff was a permissive licensee, his rights were at least equal to those of the bare licensee referred to in Anderson v. Welty, supra.

Likewise, the Supreme Court of Missouri, in White v. Burkeybile, 386 S.W.2d 418 (1965), recently said, at 423:

" * * * The plaintiff's purpose in going onto the premises and his activities in carrying out his purpose were such that it cannot be said that he was a trespasser or unlawfully on the premises at the time he was injured. The defendant contends the plaintiff was at most a licensee and we may so consider him for the purposes of this case although the category in which he is placed is not necessarily controlling in view of the fact that active negligence is charged. See Anderson v. Welty, Mo.App., 334 S.W.2d 132, 136 [5], and 65 C.J.S. Negligence § 35 i, pp. 501–502.

"Where injuries to a licensee are caused by the affirmative or active conduct of another, as distinguished from an existing or passive condition of the premises, the person committing the acts is subject to liability for failure to exercise ordinary care towards such licensee if his presence on the land is known or should reasonably be known to the actor. Anderson v. Welty, Mo.App., 334 S.W.2d 132, 136–137 [6]; Gruetzemacher v. Billings, Mo., 348 S.W.2d 952, 959 [7]; Twine v. Norris Grain Co., 241 Mo.App. 7, 226 S.W.2d 415, 422 [7]; 65 C.J.S. Negligence § 35 h, p. 501, § 36, p. 502. There can be no doubt that the operation of a motor vehicle is active or affirmative in nature regardless of where it occurs."

Thus, in the case at bar, there can be no doubt that the operation of a locomotive drawing a train at a speed of approximately 70 miles per hour in the manner hereinbefore related might reasonably be found by a jury to be active negligence which proximately contributed to plaintiff's injury as he sat in the open door of a boxcar.

McClanahan v. St. Louis Public Service Co., 363 Mo. 500, 251 S.W.2d 704 (1952),

at 708, relied on by this court in its opinion herein, actually recognizes that a railroad company is bound to abstain from recklessly injuring a *trespasser* on its car or to exercise ordinary care to avoid injuring him after discovering his peril.

The opinion of our court in this case properly asserts that the "attractive nuisance" doctrine does not apply here. In fact, the plaintiffs' theory upon which the case was tried necessarily excludes that doctrine. Moreover, that issue was not submitted to the jury and is not before us. The court told the jurors the grounds upon which plaintiffs sought recovery, and in the context thereof we find no reference to the attractive nuisance doctrine. It was and is not in this case.

Early cases cited by defendant are distinguishable on the facts. Thus, in Snyder v. H. & St. J. R. Co., 60 Mo. 413 (1875), a railroad company was held not liable for injuries to a child received while he was attempting to get on one of its cars at the invitation of its servant. In Stringer v. Mo. Pac. Ry. Co., 96 Mo. 299, 9 S.W. 905 (1888), a railroad defendant was held not liable for injuries to an 18-year-old boy who got on the front of a switch engine and lost a portion of his leg, although he was invited to get on by a brakeman.

In Chrisco v. St. Louis & S. F. R. Co., 163 Mo.App. 540, 146 S.W. 1180 (1912), a 9-year-old plaintiff had been encouraged by railroad employees to ride on a new handcar from which he fell. In a suit involving a 19-year-old man who was killed in falling from a freight car, the court in Giles v. Missouri Pac. Ry. Co., 169 Mo.App. 24, 154 S.W. 852 (1913), referred to the deceased as a "trespasser" and a "wrongdoer and lawbreaker" when the evidence in the record revealed he was killed by being thrown from the top of a freight car due to the moving of a car in switching.

These early decisions are not applicable to the situation existing at defendant's terminal here, where there was, as I have pointed out, a common, open and notorious practice by defendant's employees in charge of the freight yard which virtually amounted to an invitation to these boys to ride and thus justified the jury and the district court in considering them to be permissive licensees.

2. Despite the criticism of the court's instructions, as expressed by defendant in its brief, I find that no error was made in this respect. On the other hand, I would hold that the court properly instructed the jury, especially when it defined the term "licensee". The court's other instructions are in harmony with the views expressed in this opinion.

3. Whether plaintiff was guilty of contributory negligence was a question of fact for the jury. There was sufficient evidence from which the jury could decide that plaintiff exercised ordinary care for his own safety, taking into account his age, experience and intelligence. Under these circumstances it cannot be held as a matter of law that plaintiff was guilty of contributory negligence, as urged by defense counsel.

For these reasons the judgment from which this appeal was taken should be affirmed.